## Granger *v.* Bissell.

### In the Court below,

OLIVER GRANGER, *Petitioner ;* NOAH BISSELL, *Respondent.*

A writ of error will not lie on a judgment of the Superior Court refusing a new trial.

THIS was an application in chancery, to procure a correction in the finding of a former decree.

The case was, that *Seth Smith*, on the 26th of April, 1784, mortgaged a piece of land to *Samuel Lyman*, Esq. for the payment of 80*l.* within two months ; which was not paid until after the expiration of that time. On the 15th of March, 1790, *Smith* conveyed the same land to *Oliver Granger*, by an absolute deed ; whereupon *Granger* entered into, and continued in possession, but neglected to get his eed recorded. On the 14th of December, 1796, *Noah Bissell*, attached the land, as the property of *Smith ;* and afterwards had the same set off to him on execution. Immediately after service of *Bissell's* attachment, *Granger* procured his deed to be recorded ; and soon afterwards applied to *Lyman*, and purchased in the mortgage, which was then out-standing, though satisfied.

*Bissell* then brought a petition in chancery to the Superior Court, wherein he stated, for the purpose of impeaching the conveyance from *Smith* to *Granger*, that there was an agreement between them, at the time of making the deed, that it should not be recorded. *Granger*, in his answer, traversed that allegation ; and averred, in support of the conveyance, that he had paid *Smith* for the land its full value. The Superior Court, in their decree, expressly found, that no agreement of the kind stated had been made ; but found further, that the averment of a valuable consideration having been paid by *Granger* for the land, with most other matters alleged in the answer, were untrue ; and thereupon made an in-

junction upon *Granger* not to make any use of the out-standing mortgage, which he had purchased in.

*Granger* then brought the present bill, stating, that on the hearing of the former case, the payment of a valuable consideration to *Smith* for the land, as alleged in the answer, was proved by witnesses, and admitted by the parties ; and that the finding of the court, as to that allegation, was by mistake, and happened through the misrecollection of the judges ; and praying for a correction of such mistaken finding. (*a*)

To this bill there was a demurrer : which was adjudged insufficient.

*Daggett*, and *Bradley*, for the plaintiff in error.

1. In this case we contend, that although this fact should be thought immaterial, yet the Superior Court, upon this application, ought to have corrected their own mistake in finding.

It is the legal right, and an important right, of a party, when dissatisfied with the judgment of a court of subordinate jurisdiction, to have recourse, by writ of error, for redress, to the court above. In the case under consideration, the court have found a fact against the testimony, and contrary to the express agreement of the parties, before the court, on trial. If such finding be proper in this case, it is equally proper in every case of an issue in fact joined ; and then the rule would be, that the issue in fact is not to be found merely conformable to the proofs offered, but also according to the opinion of the court of the law ari-

(*a*) The practice in some of the states, and in the Federal Court, is, to permit a decree, which has been made *by mistake*, to be rectified, at a subsequent term, *upon motion* ; and where any error has been committed by the officers of the Court, or gentlemen of the bar, it may be corrected in like manner. 1 *Hen. & Mun.* 205, *Marr's Admin.* v. *Miller's Exrs.*

sing upon the facts pleaded. This would be to preclude a party from the benefit of redress, by writ of error, in every case, where the facts proved should be judged insufficient by the court.

2. But it is by no means admitted, that this fact is immaterial; but believed, that, if it had been found by the court, it would have laid a sure foundation for the reversal of their decree: because, it would then appear, that *Granger* and *Bissell* stood in equal equity, and that *Granger* had the legal right.

This will be evident from examining the several interests of these persons. *Lyman* had the legal title; *Smith* had nothing but an equity; *Granger*, upon his purchase, took the mere equity of *Smith*, and had then a right, or certainly upon procuring his deed to be registered, had a right, to call *Lyman* into a court of chancery, for the legal title. *Bissell* came to be in a similar situation with *Granger*. By extending the land, he had satisfied his judgment, but had acquired no legal title.

These persons were both, in equity, entitled to the land. *Granger* had paid for it, and received a deed. *Bissell* had levied upon it, and satisfied his judgment. But neither of them had obtained any legal right. *Granger* had not the legal title, because *Smith* had it not; as against *Bissell*, he had it not, because the attachment was served previous to the registry of the deed. *Bissell* had not the legal title, for the sole reason, that it was not in his debtor *Smith*.

We deem it wholly unimportant, that *Granger's* title is defective in two respects, and *Bissell's* in but one; for *Bissell's* title is defective for every purpose at law, and *Granger's* certainly cannot be worse.

At law, they are to be viewed alike; but in chancery, *Granger's* title deserves the highest consideration, because it

is first in time ; and it is a maxim in that court, *qui prior est in tempore, potior est in jure* ; and *Granger* has the possession, and *melior est conditio possidentis.*

This case cannot be compared with the ordinary case of a first and second attachment ; because a creditor has no better equitable than legal right, to say, that a specific article of the debtor's property shall be applied in discharge of his debt. It is only after service of his attachment, that he can say this ; and then his right is not so much of an equitable nature, as it is strictly legal—a positive right founded on statute.

But in the case under consideration, *Granger* had a previous equity ; and, in a most essential part, the comparison entirely fails ; for *Bissell* acquired no legal right to the land by the attachment, or levy. This is acknowledged in the original bill, and is the very foundation of it, and of the decree. For if *Bissell* had the legal title, he had remedy at law ; and why come into chancery to silence that title in *Granger*, if it was in himself.

But, it may be said, that *Granger's* neglecting to register his deed takes away his equity : This we deny. This would, indeed, be to set a mark upon him, and to punish him more than he could or ought to bear. The penalty of the statute is to defeat his legal title, and nothing more ; and shall a court of chancery invent new penalties and punishments not conceived by the law ?

We contend, therefore, that *Granger's* equity, if not superior, is at least equal to *Bissell's* ; and that, therefore, a court of chancery cannot interfere to deprive him of the benefit of the legal title purchased of *Lyman*. This principle we think so plain, that we deem it unnecessary to take up the time of the court in citing authorities. We would merely refer to 1 *Pow. Mort.* 194 to 198, and 1 *Eq. Ca. Abr.* 322, 323.

3. But, it may be objected, that this mistaken finding of

HARVARD
LAW SCHOOL
LIBRARY.

1806.

GRANGER
v.
BISSELL.

the court is *casus omissus*, and remediless.    We answer, that this application may be viewed either in the light of a bill in the nature of a bill of review, conformable to the precedents of the English courts of chancery, or as a petition for a new trial under our statute. (*b*)

4. Again, it may be objected, that a writ of error will not lie upon the judgment of a court upon a petition for a new trial, because it is a subject of discretion with the court.    If this case falls within the principle of a bill of review, the objection will not hold ; because it is independent of the statute.    But, if it depends on the statute relating to new trials, we contend, that the words " reasonable and proper," there used, import the exercise of a legal discretion. (*c*)

*Ingersoll*, for the defendant in error, contended,

1. That it cannot be shewn, in this way, that the court have made a mistake in their decree.    If the mistake appeared upon the face of the proceedings, or if there was new evidence, a bill of review might be sustained ; but not because the court made a wrong finding upon the facts before them.

2. That *Granger*, by his own shewing, had no merits ; if the mistake had been corrected, it would have availed him nothing ; and the court will always look, to ascertain whether it will be to any purpose to grant a new trial, before they grant one.

3. That a writ of error will not lie upon a judgment of the Superior Court refusing a new trial.

BY THE COURT,

The judgment was affirmed. (*d*)

(*b*) *Mit. Plead.* 78. *Stat.* 28, *edit.* 1796.

(*c*) 1 *Root* 86, *Hannaball* v. *Spalding.*  1 *Root* 129, *Fleming*, *executor of* M'*Donald* v. *Bates.*  *Ante, vol.* 1. *p.* 180. *Griswold* v. *Brown.*

(*d*) The reporter understood, that it was on the last point only, that the case was decided in this Court.