## COLBOURN *against* ROSSITER.

THIS was an action against the defendant, as sheriff of the county of *New-Haven,* for the escape of *Ralph Pearl.*

*Pearl* had given a note for 200 dollars, payable to the plaintiff, or order ; which the plaintiff sold and delivered to *Stephen Walkley,* without indorsing it. Shortly afterwards, *Walkley,* solely for his own benefit, instituted a suit, in the plaintiff's name, on the note ; recovered judgment ; took out execution ; and caused the body of *Pearl* to be arrested thereon, and committed to prison. *Pearl* then issued a citation to *Walkley* to appear at the gaol, and shew cause why the poor prisoner's oath should not be administered to him. This citation being served upon *Walkley,* he appeared, and opposed the administration of the oath. The oath was administered ; and *Walkley* left money with the gaoler for *Pearl's* support. While *Walkley* was the holder of the note, as assignee, *Pearl* brought his petition to the General Assembly, praying for an act of insolvency. He stated in his petition, that he was indebted to *Stephen Walkley,* in the sum of 215 dollars ; made him a party to the petition ; and cited him to appear. The petition was silent as to any debt due to the plaintiff ; nor was he named in the citation. *Walkley* appeared before the General Assembly, and opposed the granting of the petition. After hearing the parties, the General Assembly, at their session in *May,* 1816, passed a resolve in *Pearl's* favour, protecting his person from civil process, on account of any debt by him contracted with, or due to, the respondents named in the petition, previous to the date thereof. *Pearl* complied with the conditions specified in the resolve ; obtained a certificate from the trustees ; and immediately afterwards, *viz.* on the 25th of *May,* 1816, departed from the limits of the prison. This suit is prosecuted by *Walkley,* in the plaintiff's name, for his (*Walkley's*) sole use and benefit. In connexion with these facts, and to establish part of them, the defendant offered in evidence an exemplification of the record of the General Assembly, and the certificate of the trustees. The plaintiff objected to the admission of this evidence, on the ground that the facts stated, formed no excuse for the escape. The court rejected the evidence ; and the jury found a verdict for the plaintiff. The

*The assignee of a negotiable note, payable to order, by sale and delivery, without indorsement, on which, by direction of the assignee, a suit has been brought, and judgment obtained, in the name of the payee, is the creditor of the maker, and is the proper person to be served with notice, on a petition by the maker for an act of insolvency.*

*Hartford,*
June, 1818.

Colbourn
*v.*
Rossiter.

defendant moved for a new trial.   This motion was reserved in the usual manner.

*N. Smith,* in support of the motion, contended, that *Walkley* was the owner of the debt in question ; he alone had a right to discharge it, and controul it ; as to *that,* he alone was the creditor of *Pearl ;* as to *that,* he alone was affected by the resolve of the Assembly ; and he alone was injured, if any one was, by the escape.   The evidence offered, then, was proper to shew, that *Pearl* could be no longer holden for this debt ; and would, if admitted, have constituted a good defence.

*Staples,* contra, contended, 1. That the record of the General Assembly was inadmissible, because it was not between the same parties—it was *res inter alios acta.*   The parties to the record were *Ralph Pearl* and *Stephen Walkley ;* the parties to this action are *Pliny Colbourn* and *Nathaniel Rossiter.*

2. That as the judgment, and the execution on which *Pearl* was committed, shewed a debt due to *Colbourn,* no parol evidence could be received, to prove, that such debt was due to *Walkley.*

3. That the evidence adduced, *viz.* the sale and delivery of a note payable to *order,* without indorsement—*i. e.* without the payee's *making any order*—was insufficient to shew that the property passed to *Walkley.*

4. That if the beneficial interest passed, by the sale and delivery, to *Walkley ;* still *Colbourn* has the legal title, and can as well sue for the escape as he could sue on the note.

*Daggett,* in reply, said, 1. As to the record of the General Assembly not being between the same parties : It is not universally true, that a judgment recovered by *A.* against *B.,* cannot be given in evidence in a suit brought by *A.* against *C.* Where the judgment gives or destroys a right to or against a third person, it may be given in evidence.

2. Where a judgment is introduced on the ground that it concludes the right in question, parol evidence may be received to shew its bearing.

3. The delivery of a chose in action, for a valuable consideration, transfers the property.   It makes no difference, as

to this object, whether a note, on the face of it, be payable to the payee only, or to order or bearer.  *Jones* v. *Witter*, 13 *Mass. Rep.* 304.

4. The case shews, that *Colbourn* had parted with all his interest.

*Hartford,*
June, 1818.

Colbourn
*v.*
Rossiter.

SWIFT, Ch. J.   The note in question was negotiable ; but not having been actually indorsed, it did not vest in *Walkley,* and stands on the footing of a note not negotiable.   It is agreed, that such notes may be assigned, by delivery only, so far as they are assignable ; and the question is, whether a note thus assigned vests such an interest in the buyer, that in a petition for an act of insolvency, it is sufficient to make the assignee only a party, without averring an assignment, or making the promissee a party.

It is a principle of the common law, that a chose in action can never be transferred from one man to another, so as to enable the purchaser to bring a suit in his own name, except in the case of bills of exchange by the custom of merchants. It is by *statute*, that notes are made negotiable.

Though a chose in action can never be assigned, so as to transfer the property at law ; yet the purchaser, usually called the assignee, acquires certain rights, which will be protected, both in law and equity.   It will not be the subject of a set-off ; it will not vest in the assignees of a bankrupt ; nor is it liable on a foreign attachment.   If the assignor should release the debt, or prevent the assignee from pursuing a legal remedy in his name, he would be liable on the contract of assignment.   If the debtor, after notice of the assignment, should take a release from a bankrupt assignor, he would be subjected for a fraud on the equitable right of the assignee. If any person should steal, or destroy, such assigned note, the assignee has such a special property, by the lawful possession, that he could maintain a proper action against the wrong-doer for the injury.   Though the beneficial interest is vested in the assignee, yet he is always considered and treated in the character of attorney to the assignor, without responsibility ; and every proceeding in law or equity is grounded on the idea that the property is not vested in him at law, but that he only has the right of an attorney to collect and apply it to his own use.   Of course, every proceeding at law directly

to enforce the contract, must be in the name of the assignor, or original party.

But it is said, that the assignee of a note, not negotiable, is, to all intents and purposes, the owner, except that he cannot bring an action in his own name. Why not bring an action in his own name, if he is the owner of the note ? It is a solecism to say, that a man is the owner of a thing, and cannot bring an action in his own name. The real reason why he cannot bring an action in his own name, is, because he is not, in any sense, in judgment of law, the owner ; but as he has certain equitable rights, he is considered and treated as the owner for the protection of such rights. Hence, in common speech, he is usually called the owner. He has, however, only the beneficial, not the legal interest. But the admission, that the note cannot be sued in the name of the assignee, and that the suit must be brought in the name of the promissee, concedes all that is claimed : for on the same principle that the note must be sued in the name of the promissee, he ought to be made a party to the petition for an act of insolvency ; for if, in contemplation of law, he is the owner of the note, so that he must be the plaintiff in an action brought on the note, then for the same reason he ought to be made a party to the petition, which seeks to divest him of that legal right. There cannot be a greater inconsistency than to say, that a note must be sued in the name of the promissee, because he is the legal owner, and yet in a petition for an act of insolvency, which seeks to divest him of that right, it is not necessary that he should be a party : for it is a first principle, that no man can be divested of a legal right, by a proceeding at law, to which he is not a party ; and it has been repeatedly decided, that an act of insolvency passed by the legislature has no effect on the rights of those who are not parties to the application.

From the circumstance that the suit cannot be brought in the name of the assignee, and that the assignment is no bar to a suit in the name of the original party, it is clear, that the assignee cannot be the owner, in judgment of law, but can only be considered as an attorney, with power to collect, without accountability. Indeed, such is the usual form of all transfers of this description. There is no rule of the common law clearer than this, that an attorney can never be

treated as a principal. An attorney can never maintain a suit in his own name, in the same manner as if he were the principal ; nor can process be brought against him, in the same manner ; but the principal must always appear as a party on the record. It can make no difference whether he be an attorney to collect and pay over to the principal, or to apply to his own use ; in either case, he is but an attorney, and the same rules are applicable.

It has been insisted on, in the argument, that *Walkely* had power to discharge the note ; and this is only a discharge by act of Assembly, to which he was a party. So, any attorney who has a note, merely to collect, can discharge it : but it will not be seriously pretended, that because an attorney can discharge a note, it will be sufficient to make him a party to a petition for an act of insolvency, without giving notice to the creditor.

If, however, *Walkley* had such an interest, that it was sufficient to make him a party, then the nature of his interest should have been set forth. When the assignee of a negotiable note brings an action, he states the assignment : so here, on the same principle, *Walkley* should have been described in the petition as the assignee of *Colbourn*, so that it might have appeared from the record whose interest was to have been affected. But now, from the record of the court that rendered the judgment, *Colbourn*, the plaintiff in this suit, appears to be the creditor ; and his name no where appears in the proceedings before the General Assembly. It does not appear from the record, that *Walkley* ever had any interest in the judgment : but his name appears as a creditor in the petition. From the records, it does not appear, that the debt for which this action is brought, was discharged, by the act of insolvency. To give it this operation, an extrinsic fact must be shewn, and proved. But the record ought to speak for itself, and not be eked out by matter *dehors ;* it may lead to serious inconvenience. The sheriff could not know, that this debt, apparently due to *Colbourn*, was discharged : he could institute no inquiry to ascertain the assignment to *Walkley*. If he permitted the debtor to depart from gaol, and the note had not been assigned, he became liable for an escape : if he refused, and the note had been assigned, he became liable for false imprisonment.

No practice should be permitted, that may place an officer in such a dilemma.

On the whole, it appears to me, to say, in this case, that notice to the assignee is sufficient, is, in effect, to say, that a chose in action is assignable; a proposition directly repugnant to a well known maxim of the common law, as old, and as venerable, as the common law itself.

I would not advise a new trial.

TRUMBULL and PETERS, Js. were of the same opinion.

SMITH, J. It appears, in this case, that the note had been transferred, for a valuable consideration, by *Colbourn* to *Stephen Walkley*, though not indorsed, agreeably to the statute rendering notes negotiable : that this fact being known to *Pearl*, he made *Walkley* a party to his petition for an act of insolvency, as being the *creditor*, and gave no notice to *Colbourn*.

It is now insisted, that the act of insolvency obtained on such petition, will not justify the sheriff in releasing *Pearl* from an imprisonment, procured by *Walkley*, upon an execution obtained by him in the name of *Colbourn*, upon the note so transferred. But in my judgment, *Walkley* was the real creditor, and the only proper person to be made a party to the petition. He being a purchaser of the note, for a valuable consideration, was the owner of the debt. He alone could dispose of it ; and he only could receive payment. I speak not of *chancery*, merely ; it is the same at law. There is no hostility between the different jurisdictions on this subject. It is a well settled principle of common law in *Connecticut*, that the property in a chose in action, may be assigned ; and the courts of law have long since recognized the property in the assignee as fully as courts of chancery.

The last feature, which remained for some time, to distinguish the two jurisdictions, was that of resorting to a court of chancery for redress against an obligor, who had received a discharge from a bankrupt obligee, knowing the debt to be assigned. But this distinguishing feature is now removed ; and the course is so well settled to bring suits at law, that I feel no hesitation in saying, that a court of chancery would not sustain a bill of the kind. The old form of bringing the

*Hartford,*
June, 1818.

Colbourn
*v.*
Rossiter.

suit on the note, in the name of the obligee, is, indeed, continued; but it is now mere form; and whenever any collateral injury is done to the debt, such as obliterating, destroying, or converting the note wrongfully to the use of another; or any injury to process on the note, such as rescous, or escape; the action may, and ought to be, brought in the name of the assignee. In the present case, bringing the action in the name of *Colbourn,* is a mere attempt of the party, to avail himself of the forms of law, regardless of the substance. *Walkley* was the only person injured by the escape, if any injury was done; and the right of action, if any, was to him; and the action ought to have been in his name.

EDMOND and BRAINARD, Js. were of the same opinion.

HOSMER, J. The act of insolvency in favour of *Ralph Pearl,* as against the parties to his petition, is conclusive on every debt to which it extends.

*Walkley* was a party, and the act explicitly operates on any demand which may have been due to him at the date of *Pearl's* petition.

The judgment against *Pearl,* the force of which is now in question, was rendered on a promissory note which he had given to *Colbourn.* This note was negotiable, and had, by delivery, without indorsement, been transferred to *Walkley,* at least, so far as related to the equitable or beneficial interest of it. *Jones* v. *Witter,* 13 *Mass. Rep.* 304. The suit in the name of *Colbourn,* was instituted by *Walkley;* on the execution which issued, he caused *Pearl* to be imprisoned; the money due was his; and he was the only person who could be injured by *Pearl's* escape. In my judgment, it would be a very limited construction of the act of insolvency, to say, that it was intended to operate merely on the debts *nominally* due to *Walkley.* For aught that I have heard, the judgment debt in the name of *Colbourn,* was the only demand existing in favour of *Walkley* against *Pearl.* He answered to the petition of *Pearl,* to which he was made a party; and opposed it, undoubtedly believing, that if it were granted, it must extinguish the before mentioned debt. The words of the act are sufficiently comprehensive to embrace this subject, and to bar any claim in favour of *Walkley.*

The only remaining enquiry relates to the efficacy of the act against *Pliny Colbourn.* He was no party to the petition, and on any real demand of his, it is unquestionable, the act cannot have any operation. Any seeming difficulties arising from this source, however, must vanish, so soon as it is recollected, that *Colbourn* is merely nominal, the trustee only of *Walkley;* and that the suit was brought by *Walkley* in his name, and is pursued for his own benefit. It would be passing strange, to permit the act to be evaded, and the rights of *Pearl* prostrated, by a refusal to see what is most obviously visible.

It has been said, that the interest of *Walkley* is merely an equity; and that the only claim which a court of law can recognize, is in *Colbourn.* I do not accede to this proposition. The whole beneficial interest is in *Walkley;* and of this, a court of law is authorized to take cognizance. " The good sense" says *Buller,* J. " of the rule (that a chose in action cannot be assigned) seems to me to be very questionable; and in early, as well as modern times, it has been so explained away, that it remains, at most, only an objection to the form of action." *Master* v. *Miller,* 4 *Term Rep.* 340. In *Bottomley* v. *Brooke,* cited in *Winch* v. *Keeley,* 1 *Term Rep.* 621. which was debt on bond, the defendant pleaded, that the bond was for security of 100*l.* lent to the defendant by *E. Chancellor,* and was given by her direction in trust for her; and that *E. Chancellor* was indebted to the defendant in more money. To this plea there was a demurrer, which was withdrawn by the advice of the court. In *Rudge* v. *Birch,* cited in 1 *Term Rep.* 622. on the same pleadings, there was judgment for the defendant. In *Winch* v. *Keeley,* 1 *Term Rep.* 619. where the obligee had assigned a bond, and afterwards became bankrupt, the court held, that he might maintain the action in his own name for the benefit of his assignee. In these, and other cases that might be cited, (*Coleman* v. *Wolcott,* 4 *Day* 6. *Webster* v. *Scales,* 25. *G.* 3. *B. R.*) courts of law have taken notice, that the nominal plaintiff was not the party in interest; that he was trustee for another person; and having looked from the record to the beneficial owner, have decided precisely as if he had been a party to the record. Acting on principles of good sense, with a view to the administration of justice, it must be difficult to assign a reason

why the court should be compelled, by *mere forms*, to disregard the rights of the only person interested, and sacrifice the substance to the shadow. Had *Colbourn* obtained an act of insolvency, and given a general assignment to trustees of all his property, it would not have transferred the note before delivered and assigned to *Walkley*. (*Vid. Webster* v. *Scales,* before cited.) A suit in the name of *Colbourn* might be instituted on the note, for the benefit of *Walkley,* and against any plea on the part of the defendant, the court would recognize the rights of *Walkley,* and decide accordingly. (*Vid. Winch* v. *Keeley,* before cited.) Now, it seems impossible to assign a reason, why the court should go out of the record to ascertain the property of *Walkley,* to protect it ; and yet, that they should be precluded from the recognition of the same fact, in order to the administration of equal justice to the defendant.

The testimony rejected by the superior court should have been admitted ; and therefore, I advise a new trial.

Gould, J. The question, whether the resolve of the General Assembly is a good defence to this action, is reducible to two others : 1. Was the beneficial interest in *Pearl's* note to the plaintiff, vested, by transfer, in *Walkley* ? 2. If so, in whom of the two—*Walkley,* or the plaintiff—would the right to recover for the escape, be, if there had been no such resolve ?

There is now no doubt, that a *chose in action,* though not negotiable, may be assigned to every purpose, except that of conveying the *legal* interest in the debt. And the only effect of the exception, under our law, as I have ever understood it, is, that the assignee cannot maintain an action, in his *own name,* upon the note, or other obligation assigned ; and that the assignor, may, therefore, at law, *release* the debt, after notice to the debtor, of the assignment. In some of our neighbouring states, and by a rule of practice in *England,* also, the exception has been narrowed still more. *Andrews* v. *Beecher,* 1 *Johns. Ca.* 411. *Wardell* v. *Eden,* 1 *Johns. Rep.* 531. n. *Littlefield* v. *Storey,* 3 *Johns. Rep.* 425. *Jones* v. *Witter,* 13 *Mass. Rep.* 304. *Legh* v. *Legh,* 1 *Bos. & Pull.* 447. It is true, that, for a reason not applicable to the present question, a negotiable note, payable to *order,* cannot be so transferred, as to carry the legal title to the debt, without indorsement : but there can be no question, that the *equita-*

*Hartford,*
*June, 1818.*

Colbourn
*v.*
Rossiter.

ble, or *beneficial*, interest, in any *chose in action*, in general, is a subject of assignment; and there is, clearly, no rule of law, requiring an assignment of this kind to be in writing. It is merely the sale of an interest in a personal chattel; and no other solemnity is essential to such a sale, than is necessary, in transferring a right to any other personal chattel. If a parol contract of assignment, accompanied with delivery, were not valid; it would follow, that the assignment must be by *deed*: for the common law makes no distinction between a verbal contract, and a written one, not under seal. But there can be no pretence, that a deed is necessary for this purpose. Indeed, the point is settled, in *Howell* v. *MacIvers*, 4 *Term Rep.* 690.

Upon the second question, it is to be remarked, that this is an action, claiming a recovery for *damage*, sustained in consequence of an escape: and it is a first principle, that the person *injured* by a wrong, is the party entitled to redress. Who, then, is the party injured, in this instance, if any legal injury has been done? I answer, *Walkley*, the assignee of the note—the person, who had the whole beneficial interest in it, and in the judgment recovered upon it; the person who was *actually* entitled to the avails of the judgment, and must have received the money, due upon it, if it had been collected. The plaintiff has sustained no injury, or loss, of any sort. The *only* damage occasioned by *Pearl's* enlargement, (and even this, as it here appears, is *damnum absque injuria*,) has been incurred by *Walkley*. He, therefore, is the only person, who could recover for this alleged escape, if there were any right of recovery in the case. For the same reasons, he was the party, entitled to notice, on *Pearl's* petition to be liberated from imprisonment. The plaintiff was not interested in the event of that petition. He was not *the creditor*. The debt was due *nominally* to him, but *actually* to *Walkley*. The latter, it is admitted, could not maintain an action in his own name, *directly* upon the note or the judgment, because, upon the face of them, the interest does not appear to be his. And for this reason, the assignor is, for the purpose of enforcing a recovery, by an action, *founded immediately* upon the assigned security, in the nature of a trustee for the assignee—but no further. And, therefore, in *collateral* actions, like the present, in which this reason does not operate, the rights of the assignee are a proper subject of

averment; and courts of law recognize and protect them. The recognition of trusts of this nature, in actions at law, has, in the *English* courts, long since ceased to be a novelty. 1 *Roll. Abr.* 29. *Mouldsdale* v. *Birchall*, 2 *Bla. Rep.* 820. *Winch* v. *Keeley*, 1 *Term Rep.* 619. 621, 2. *Master* v. *Miller*, 4 *Term Rep.* 341, 2.

In our own courts, also, the decisions, in all analogous cases, have proceeded upon the principle, that the assignee is the real creditor, except for the purpose of recovering, in his own name, *upon the original security.* And it has been so often determined, as to have now become a matter of common experience, that if one, having assigned a debt, and absconded, is sued, by foreign attachment; the assignment is a good defence, at law, for the assignee: that an assignor is liable, at law, to his assignee, in an action *on the case for fraud*, as the case may be, for releasing the debt assigned: and that the promissor, or original debtor, is also answerable, in *the same form of action*, for accepting a release, after notice of the assignment, and defending under it. Now, what possible objection, that could be urged against *Walkley's* recovering, for this escape, (supposing *Pearl's* enlargement to have been an escape in law), would not be equally strong against a right of recovery in the two former cases? No difference in principle can be shown, between the three cases; for none exists. In all of them, the injury consists in a violation of the same *equitable* right: in all of them, the objection, which would prevent the assignee from recovering, in his own name, upon the original security, is removed; and in all of them, therefore, if in either, an action at law is a remedy, adapted to the injury. The case of an assignee's recovering, against the original debtor, for accepting a release, is, indeed, much stronger, in point of precedent, than a recovery, by the same party, in a case like the present, would be. And as to the general doctrine, that an action at law lies, for the violation of an equitable right, the case of *Coleman* v. *Wolcott*, determined in this Court, (4 *Day*, 6.) is still stronger than either.

The objection, on the part of the plaintiff, that the resolve of the legislature, discharging *Pearl* from imprisonment, is *res inter alios acta*, is a total misapplication of the rule referred to in support of it. One might as well contend, that in ejectment, an execution title, under a judgment against the

*Hartford,*
*June, 1818.*

Colbourn
*v.*
Rossiter.

former owner of the land, or even a deed of conveyance from him, is not evidence, as being *res inter alios acta.* The proceedings of the legislature were not introduced, to prove the truth of any of the allegations in *Pearl's* petition. The operative evidence was the *decree,* or *sentence,* which is in the nature of a proceeding *in rem.*

My opinion is, therefore, that the resolve of the legislature is a good defence to the action.

CHAPMAN, J. gave no opinion, not having been present when the case was argued.

New trial to be granted.