MAGILL *against* LYMAN and others.

The granting or refusal of a new trial, on a petition for that purpose, is a matter of discretion, and not the subject of error.

The decree of a court, on a petition for a new trial, granting the prayer of the petition, is not a final judgment; and is not, on that ground, the subject of error.

Where the payee of a promissory note assigned it, with the rest of his property, to trustees, for the benefit of his creditors; a suit in the name of the payee, was afterwards brought on that note, and judgment recovered; and the original defendant then brought a petition for a new trial, making the original plaintiff and the trustees parties; it was held, that the beneficial interest of the note and judgment being in the trustees, they were properly made parties.

At the term of the city court of the city of *Middletown*, in *December*, 1821, *Henry Lyman* recovered judgment, by default, on a promissory note, against *Arthur W. Magill*, for the sum of 77 dollars, 18 cents. At the term of the same court in *April*, 1822, *Magill* brought a petition, stating, that *Lyman* was previously indebted to him in a greater sum; that at the commencement of said action, and at the time when said judgment was recovered, *Lyman* was insolvent, and so continued to be; and that he had, on the 19th of *August*, 1821, made a general assignment of his property, including said note, to *Justin Lyman* and *Thomas Hubbard*, in trust for the benefit of his creditors; praying for a new trial, with a view to obtain a set-off; and making *Justin Lyman* and *Thomas Hubbard* parties with *Henry*

*Middlesex,*
July,
1825.

Mather
*v.*
Chapman.

6    59
75   577
75   579

*Lyman.* The respondents pleaded, that the facts alleged were neither true nor sufficient. The court, at the term in *January*, 1823, found the facts alleged true, and adjudged them sufficient; and thereupon granted a new trial, reserving the question of costs on the petition. To reverse this decree, the respondents, in *February*, 1823, brought a writ of error in the superior court, assigning for error, 1st, that the petition was insufficient; and 2ndly, that *Justin Lyman* and *Thomas Hubbard* were improperly made parties. To this writ of error *Magill* pleaded in abatement, that the action at law on the note was then depending before the city court, undetermined. On demurrer to this plea, the superior court adjudged it insufficient; and after a hearing on the plea of *in nullo est erratum*, reversed the decree of the city court granting a new trial. To set aside the judgment of reversal, the present writ of error was brought before this Court.

*Daggett* and *Stanley*, for the plaintiff in error.

*Hotchkiss* and *Storrs*, for the defendants in error.

PETERS, J. 1. It has been so frequently, and so recently, decided by this Court, that the granting or refusing of a new trial, is entirely a matter of discretion, and is not the subject of error, that it cannot now be questioned. *White* v. *Trinity Church*, 5 *Conn. Rep.* 187.

2. *Justin Lyman* and *Thomas Hubbard* were properly made parties. They were the owners of the note, but necessarily procured the judgment in the name of the promisee, whose interest was merely nominal. Had he assigned this note only, without indorsement, and petitioned for the benefit of the insolvent law, the assignee must have been made a party; as was decided in *Colbourn* v. *Rossiter*, 2 *Conn. Rep.* 503. In that case, *Colbourn* assigned a negotiable note against *Pearl*, to *Walkley*, without indorsement. *Walkley* recovered judgment, in the name of *Colbourn*, against *Pearl*, and committed him to prison. *Pearl* petitioned the legislature for an act of insolvency, and made *Walkley* a party, but *not Colbourn*. The petition was granted, and *Pearl* released; and *Walkley* sued the sheriff, in the name of *Colbourn*, for an escape; but it was holden, that the assignee of a negotiable note, without indorsement, is the creditor of the maker, and the proper person to be serv-

ed with notice on a petition by the maker, for an act of insol- *Middlesex*, July, 1825.
vency, though he had obtained judgment on the note in the
name of the promisee; and it was said, by a distinguished mem-
ber of the court: "The whole beneficial interest is in *Walk-*
*ley;* and of this a court of law is authorized to take cogni-
zance." " Acting on principles of good sense, with a view to
the administration of justice, it must be difficult to assign a rea-
son, why the court should be compelled, by mere form, to dis-
regard the rights of the only person interested, and sacrifice the
substance to the shadow."

Magill
v.
Lyman.

3. Is the award of a new trial, a final judgment? Judgments
are interlocutory or final. Interlocutory judgments are render-
ed in some intermediate stage of a cause; as in account, *quod*
*computet;* in abatement, *respondeat ouster;* of which error is
not predicable. *Bac. Abr. tit.* Error. A. 2. Final judgments
are rendered at the termination of a cause, and make an end
of it, by awarding damages and costs to the plaintiff, or costs
to the defendant. These only are the foundation of a writ of
error. But it is a singular termination of a cause, when nei-
ther party recovers any thing, but the bootless privilege of fur-
ther litigation. A suit or action is a legal demand of one's
right; but a petition for a new trial, like a motion for the same
object, is not an action. It demands nothing; but simply asks
permission to review a cause already decided; which the court
may award of their own accord, if satisfied that justice has not
been done. *The King* v. *Teal* & al. 11 *East,* 308. In *Met-*
*calfe's* case, 11 *Rep.* 38. *b.* 40. *a.* it was resolved by the whole
court, "That the writ of error upon this judgment *quod com-*
*putet,* before the final judgment given, lay not; for by the award
*quod computet,* no sum is recovered; nor doth it make an end
of the original; but is only a means to bring it to the end. But
the judgment, by which he shall recover not only the arrearages
of the account, but damages also, is the end and determination
of the original; and therefore, the writ of error may well say
*ad grave damnum* of him who was defendant in the account;
for by the judgment he has loss, but not by the award; and
therefore, the judgment intended in the writ of error is *judici-*
*um graviter damnosum* to the defendant."

BRISTOL, J. was of the same opinion.

HOSMER, Ch. J. The plaintiff in error contends, that the

*Middlesex,*
July,
1825.

Magill
*v.*
Lyman.

matter contained in his plea of abatement before the superior court, *viz.* the pendency of the action at law, was sufficient, and should so have been adjudged. If in this he is mistaken, he then insists, that there was no error in the determination of the city court.

The general reason advanced in support of the plea of abatement, is, that final judgment has not been rendered to authorize the bringing of a writ of error, because the action on the promissory note is pending; and because the ultimate judgment in the original action upon the note, is the final judgment requisite to sanction the aforesaid writ.

When analysed, the argument of the counsel for the plaintiff in error, in relation to the plea of abatement, presents the following propositions: First, that the petitition for new trial, is not *an action.* Secondly, that the decree granting the petition, and setting aside the judgment in the former action, (the sole object of the petition,) is not a *final judgment;* inasmuch as the action revived by the decree, is yet pending and undetermined; and that the party aggrieved by error in the decree must await the determination of the suit on the note. Lastly, that there has been no final decree on the petition; the *costs* remaining subject to the future order of the city court.

If my observations shall be trite, and the mere attempt to illustrate truths perfectly known and familiar, the necessity put upon me to do this, or be silent, must be my apology.

In direct opposition to the grounds of argument above suggested, I shall shew, that the petition for new trial is *an action;* and that a decree granting the prayer of it, and nullifying the judgment, is a *final* decree, and the subject immediately of a writ of error.

1. A petition for new trial to set aside a judgment rendered by a court of law, is an action.

The plaintiff in error has confounded a motion for new trial with the petition, as if they were identical; and on this position the stress of the argument has been placed. What, then, is a motion? Any proposition or request, formal or informal, addressed to a court, which can affect a cause; whether by obtaining the continuance of it; a reference of it to men; the exhibition of documents; the granting of a *venire-facias de novo;* or any thing else bearing upon the suit, however remotely. But an action is a legal process by writ, duly signed by a magistrate, whereon a duty is paid; commanding the appearance

of a defendant in court to answer a specified cause of complaint; served and returned, by a legal officer; the subject of pleading, of the law of limitation, of a decree, and of error. A petition for a new trial has all these properties; and by its properties a thing is distinguished.

I never should have anticipated the enquiry, whether a petition for new trial is an action, unless it had been made a question by the plaintiff in error. Every fact bearing on this point that can be asserted relative to an action of *assumpsit*, of covenant, of debt, of trespass, is equally averrable of a petition for a new trial. They are identical in the mode of their origination; in the pleading and judgment; and, in short, in every thing material, from their commencement to their consummation. They, undoubtedly, differ in their object, or final cause; but this is a circumstance, which merely discriminates the species of actions from each other, but is totally irrelative to their *genus*, or the constituents of an action generally. It is equally true, that motions and actions possess one common feature, in the production of results nearly or quite similar. The motion for a new trial, when granted, annuls a verdict; and so does a motion in arrest; and in these respects, they bear a resemblance to a petition for a new trial. But the effect of a proceeding in court, exclusively considered, is no grond on which to determine its nature and denomination. A more general view is necessary, and the whole properties must undergo examination, in order to decide what a thing is in itself, or to what it may be resembled. A boy has many properties identically the same as a man; but notwithstanding this, he is not a man; nor is a motion, with some properties of an action, to be confounded with a petition.

It is a maxim *Qui nomina intelligit, res etiam intelligit;* and until now I had ever supposed, that the words *action* and *petition*, the latter of which is an action of a specific nature, I fully, and without disquisition, understood, from their denomination only.

The well known history of petitions and of motions for new trial, demonstrates, most unquestionably, their dissimilarity.

Petitions for a new trial, from a very early period, were exclusively entertained by the General Assembly, and continued within their jurisdiction until the year 1762. They were brought by a writ and petition, adapted to their nature and object; were wholly separate from, and disconnected with, any

*Middlesex,*
July,
1825.

Magill
*v.*
Lyman.

*Middlesex,*
*July,*
*1825.*

*Magill*
*v.*
*Lyman.*

suit at law; and when granted, a decree was passed, reviving the formerly determined action at law, by annulling the judgment. From the moment of the decree, the petition was *functus officio* on the files of the General Assembly; and having given life to the suit at law, the latter was re-entered in the docket of the court, and proceeded with, as if no trial upon it had ever been had. In the year before-mentioned, the superior and county courts were invested with the right of granting new trials; and ever since their jurisdiction has been exercised, by the exhibition of a writ and petition, by the service of it, and a hearing and decree upon it, and by nullifying the judgment complained of; dismissing the dormant petition from thought, and re-entering the revived action, precisely according to the established practice of the General Assembly.

Motions for new trial were not known in practice until within twenty years, when they were first introduced, by the superior court, as incidental to judicial tribunals, and to give relief against any error of the court in the admission or rejection of testimony, or in the charge to the jury. They are to be filed with the clerk within forty-eight hours after the verdict is given in, and are confined to the narrow range already mentioned. It is prescribed, that they be in writing, for the accuracy which this mode presents of embodying and preserving facts; but, in their nature, here, as in *Westminster-Hall*, they are of no higher grade than motions *ore tenus*. Like the motion in arrest, they vacate the former proceedings in the action at law, and, unless restrained by express provision, the suit proceeds on *ut res nova*.

From this brief history, the essential difference between petitions and motions strikingly apppears. The latter is no suit, and has no resemblance to a petition, except in the *effect* of granting a new trial; a fact, which, as has been shewn, is no evidence of common nature or denomination. But a petition for new trial is a suit at law, with all the properties of an action; terminated by a formal decree; from this time *functus officio*; and liable to reversal, at any time within three years, by writ of error. I conclude, then, that a petition is *an action*, and essentially distinguishable from a motion.

2. The decree on a petition granting a new trial, is *final*, and the immediate subject of a writ of error.

Two reasons have been assigned by the plaintiff in error, why the decree on the petition for new trial was not final.

First, it is said, that the court having reserved for consideration the costs on the petition, the judgment was incomplete, and final only in part; and secondly, that the final judgment referred to by the law, is the ultimate determination of the action, which the new trial has revived.

Before I reply to the preceding objections, which involve the denial that a final judgment was rendered, before error brought, it will be useful to state the law on this subject.

A writ of error lies where a person is aggrieved by an error in the foundation, proceeding, judgment or execution of a suit; (*Co. Litt.* 289. *b.*) but it cannot be sustained until after final judgment. Notwithstanding there is an interlocutory decision, yet as a future judgment, *in the same case,* may relieve the party aggrieved from an error committed against him, it is reasonable that he should await such judgment, before he appeals to a higher court. Hence, as was said, by the superior court, in *Carpenter* v. *Childs,* 1 *Root* 181. and in *Ray* v. *Fitch,* 1 *Root* 290. "a writ of error will not lie against any *interlocutory* judgment, before final judgment is given." Vid. *Bac. Abr. tit.* Error. A. 2. This principle, however, is not arbitrary, and founded in the despotic will of the court, but in the soundest reason and justice. The general rule, like most other rules of this description, has its exceptions, because cases will arise, that do not fall within the reason of it. I will mention one only out of many that have been determined. If the plaintiff recovers in an *ejectione firmæ,* by confession, *nihil dicit, non sum informatus,* or demurrer, a writ of error lies before a writ of enquiry of damages executed; for the judgment *quod recuperet possessionem* is perfect; and by omitting to execute the enquiry of damages, the delay to the defendant might be extremely inconvenient. *Bighton* v. *Sawle, Cro. Eliz.* 235. *Bac. Abr. tit.* Error. A. 2. (*vol.* 2. *p.* 454. *Wils.* ed.) The same doctrine was held in Lord *Barkley* v. Countess of *Warwick, Cro. Eliz.* 636. in which case it was adjudged, that a writ of error could not be brought to reverse the interlocutory judgment in a writ of partition *quod partitio fiat,* until final judgment was given in the cause. But, it was said, that "in divers cases, where there are two judgments, and where the first is *principal,* there error may lie before the second: as where an assise or an *ejectione firmæ* is brought, where the land is the principal, if judgment be given for it, although damages are to be recovered, yet before a writ of enquiry for them, error lies; *because the damages*

*Middlesex,*
July,
1825.

*Magill*
*v.*
*Lyman.*

*are but accessory."*   In trespass, &c. where the damages are the principal thing, judgment must be given before error brought ; and this distinction was sanctioned, by the court, in the case last cited.   Hence, most probably, has arisen a common practice, in this state, of bringing a writ of error, before the allowance of the costs.

The costs in an action are *accessory* only ; and if, in any given case, they are *discretionary,* so as not to be the subject of a writ of error ; (*White* v. *Trinity Church,* 5 *Conn. Rep.* 187.) why should there be a delay of such suit ? Be the determination of the city court what it may, as to the costs on the petition of *Magill* for a new trial, such judgment will be unquestionable and irreversible.   Shall there, then, be delay, for the sole purpose of delay ? Delay of judgment, considered *per se,* is always an evil ; and if it can be productive of no good, it is a denial of justice.   I, therefore, am of opinion, that the reservation of costs for a future decision, does not take from the decree in question that *final* character, which authorizes the bringing of a writ of error.   From this opinion I believe no one will dissent, if he admits that a decree on a petition for new trial annulling a former decision, is a final judgment in the cause ; and this cannot be denied, unless on this novel supposition, that a motion and petition possess the same properties, and are of the same legal character ; and of consequence, that a petition is not an action.   If before the year 1762, while the General Assembly had the sole jurisdiction relative to new trials, there had been a petition before that body, which was granted, and by this decision, the action at law revived, there would be no question whether final judgment had been rendered on the petition. As little controversy is there now, upon the same facts existing in courts, to whom the above jurisdiction has been delegated, and who proceed, in all respects, as the General Assembly had done before them.

It has, however, been suggested, that the action and petition for new trial are so united and identified, that the latter must be considered as pending until the former is determined.   This supposition is arbitrary, artificial and supported by no principle. If a petition for new trial is not reducible to a motion, (and those who will examine the properties of each will easily decide this question,) then the petition of *Magill* was perfectly distinct and independent of the action against him ; having different parties, a different subject matter, a different object, and a different

judgment. The attempted identification of the heterogeneous things, is not barely difficult, but absolutely impossible. The petition for new trial relates to the original action, as a bill in chancery does to a suit at law, when brought to obtain an injunction against it; but the petition, the bill and the action have no unity or identity. Now, if identity is predicable of two actions, because one relates to the other, and by its judgment operates upon it; then a bill in chancery in the above instance supposed, is identified with the suit at law acted upon, and the decree of the General Assembly on the petition for a new trial in *Calder* v. *Bull*, 3 *Dall.* 386. granting a new trial before the court of probate, was part of the probate records!

It is said, that the writ of error should await the final determination of the action, because the determination of it may take away the complaint of *Lyman* and others in error. This, in my opinion, is not correct, either in fact or in law.

Suppose the action should be determined in favour of *Lyman;* will he have no ground of objection to an unfounded judgment on the petition, which has accumulated on him and others a load of costs, both unnecessary and inequitable; and on which he and his copartners ought to have recovered *their* costs? On the other hand, if *Magill* should be successful, will not *Lyman* have reason to complain of a decree, that unjustly, because erroneously, has deprived him of a final judgment? Besides, if the error is reviewed, after the determination of the action at law, how inequitable and ruinous the delay! Years may elapse before this event takes place, and in the mean time the action may run the whole round of litigation until it is exhausted to the dregs, and the party is deprived of property in this unnecessary conflict much beyond the whole value of the matter in question. There is no reason for requiring a moment's delay; and the rule of law in opposition to the claim, is well established. The final judgment on the petition, if erroneous, ought to be the subject of error and reversal, for the benefit of both parties. Before a writ of error may be sustained, there must be a final judgment, at least, so far as respects the principal object of suit. But there is no legal ground for exacting a delay until the determination of a *distinct* action.

I am clear, that the writ of error before the superior court, was not abateable.

The opinion of the court, if I do not misunderstand it, is, that the plea of abatement by *Magill*, is sufficient; and for this

reason, that the judgment of the superior court ought to be reversed. This renders a full discussion of the case, under the plea of *in nullo est erratum,* unnecessary. A few observations are all that I think expedient on this point.

A petition for a new trial is an action at law, without a single feature of a bill in chancery, except that it has the same form. The form of action does not determine its nature or denomination. It is well known, that the process on the statute of bastardy, is, in no respect distinguishable from the ordinary process for crimes committed; but the court in *Hinman* v. *Taylor,* 2 *Conn. Rep.* 357. decided it was a *civil* suit, and exclusively on a view of its *essence.* Petitions for highways and for various other purposes, are brought in courts of law, bearing on their face every appearance of suits in chancery; but the court to which they are brought, and the law on which they are founded, decisively shew, that they are not suits in chancery. There is, in this case, an argument positively conclusive, and forbidding a question. The city court has no chancery jurisdiction; and if a petition for a new trial is a bill in chancery, it could not be addressed to that tribunal. On this subject the minds of some may have been misled, by reflecting on the equitable principles adopted for the granting or refusing of new trials. But are not these principles at the foundation of the actions for money had and received, and for contribution? And are these bills in chancery? Other instances, equally familiar, occur; but these are decisive.

If it be said, that *Justin Lyman* and *Thomas Hubbard* were assignees of the note in question, and therefore ought to be made parties, it proves too much. They, equally, should have brought their suit upon it originally; and for this no one will contend. The equitable interest of the assignee of a promissory note always is, and must be, in courts of law, vindicated and protected in the name of the promisee only. *Bulkley* v. *Landon,* 3 *Conn. Rep.* 76.

A petition for a new trial, whether granted or refused, so far as respects *its merits,* is not the subject of error, because it is decided on the *discretion* of the judge. But it requires *regularity* of proceeding, like every other action. If the steps taken in bringing it before a court, are not legal; it is not within the jurisdiction to grant it.

The real principle of practice in petitions for new trial and writs of error, (for there is no difference) is, that the party or

the privy to the judgment questioned, must be made a party, and no one else. *Bac. Abr. tit.* Error. B. 1 *Archbold's Prac.* 211. There is no pretence that *Justin Lyman* and *Thomas Hubbard* were parties or privies ; and they ought not to have been made defendants in the petition.

*Middlesex,*
*July,*
*1825.*

Magill
*v.*
Lyman.

It results necessarily, that the petition was fatally defective in this particular; and it appearing on the record, it is a defect in substance, perfectly incurable. If too many persons be made defendants, and the objection appear upon the pleadings, either of the defendants may demur, move in arrest of judgment, or support a writ of error. 1 *Chitt. Plead.* 34.

The judgment of the superior court I would affirm.

Brainard, J. was absent.

Judgment reversed.