MICHAEL J. GANNON vs. THE STATE OF CONNECTICUT.

Third Judicial District, New Haven, January Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A petition for a new trial is not an independent action, but is a part of the original proceeding.

If the petition is based on newly-discovered evidence, it must be set forth, together with the evidence produced upon the trial, in order that the court may see whether injustice has probably been done, and whether the newly-discovered evidence is likely to reverse the result. The adverse party may then controvert the accuracy of the statement of old or new testimony, or may produce other testimony to be considered with it; and for this purpose no pleadings

Gannon *v.* The State.

are essential. Or he may admit the accuracy of the statement and demur.

In passing upon such a petition the trial court acts in the exercise of its sound discretion, controlled by the well-established rules defining the requisites essential to granting a new trial, and its action can be reviewed upon appeal only when there has been an abuse of discretion, or when the trial court has misjudged the limits of such discretionary power.

The after-recollection of a witness as to some fact omitted from or incorrectly stated in his testimony, is not ordinarily a sufficient ground for a new trial; and this is especially true when the afterthought touches a subordinate or collateral matter.

The facts in the present case reviewed, and the action of the lower court in refusing to grant a new trial sustained.

Argued January 29th—decided March 4th, 1903.

PETITION for a new trial for newly-discovered evidence, brought to and tried by the Superior Court in Fairfield County, *Shumway, J.;* demurrer to petition sustained, and appeal by the plaintiff. *No error.*

The case is sufficiently stated in the opinion.

*Stiles Judson, Jr.,* for the appellant (plaintiff).

*Galen A. Carter,* Assistant State's Attorney, for the appellee (the State).

HAMERSLEY, J. A court which has rendered final judgment in a cause tried before it may, upon reasonable ground being shown, grant a new trial in the exercise of that discretionary power—within the limits of law over their own judgments—vested in courts. General Statutes, Rev. 1902, § 815. Upon an application for this purpose, process is issued citing the opposite party to appear and be heard. This, however, does not make the application an independent action. *Magill* v. *Lyman,* 6 Conn. 59; *Spear* v. *Coon,* 32 id. 292. The finality of a judgment does not preclude the court that rendered it from entertaining further proceedings in the same action, when it is made apparent that injustice has been done. When, however, a judgment has been rendered upon the verdict of a jury, and that verdict is based upon evidence

VOL. LXXV—37

sufficient to support it, and no error in law has intervened in the trial and no mistake in pleading has occurred, or other mistake or accident to prevent the party from having a fair trial upon the merits, and the proceedings in the cause have been regular and lawful from its commencement to its close, any legal inference of injustice is excluded. The policy of the law treats it as final for all purposes, and forbids the court which rendered it from entertaining any further proceedings. It is possible that a losing party by some mistake or misfortune, and without fault of his own, may have been unable to have produced on the trial evidence now attainable, which, if produced and believed, would demonstrate the injustice of the judgment, and so a new trial may be granted for the discovery of new evidence of this character.

The application is addressed to the discretion of the court (*State* v. *Brockhaus*, 72 Conn. 109, 111; *Hamlin* v. *State*, 48 id. 92), and must allege and set forth the evidence produced on the former trial, together with the newly-discovered evidence, in order that the court may see whether injustice has probably been done, and whether the newly-discovered evidence is likely to reverse the result. If the adverse party desires to controvert the accuracy of the statement of the former testimony, or of the new testimony set forth, or to produce other testimony to be considered with that alleged, he may do so, and for this purpose no pleadings are essential. 1 Swift's Digest, 788. Or he may admit the accuracy of the statement of the testimony, both old and new, and for this purpose a demurrer is used. In either case, whether upon the testimony old and new—as found by the court after hearing witnesses—or upon such testimony as set forth in the application and admitted, the court decides in the exercise of a sound discretion whether a new trial should be granted or denied. *Parsons* v. *Platt*, 37 Conn. 563, 567. This discretion is a legal one : it is controlled by the well-established rules defining the requisites essential to granting a new trial. It may be abused by refusing a new trial where all essential requisites exist and the injustice of the judgment is apparent, and error may be affirmed where the trial

court has erroneously held it had no power to exercise discretion. *Wildman* v. *Wildman*, 72 Conn. 262. But, within these limits, the power is discretionary, and its exercise in the denial of a new trial on the ground of newly-discovered evidence cannot be reviewed upon proceedings in error. This principle is firmly settled by many decisions of this court, extending from its organization to the present time. *Kimball* v. *Cady*, Kirby, 41; *Granger* v. *Bissell*, 2 Day, 364; *Lewis* v. *Hawley*, 1 Conn. 49; *White* v. *Trinity Church*, 5 id. 187, 189; *Magill* v. *Lyman*, 6 id. 59; *Lester* v. *State*, 11 id. 415; *Norwich & W. R. Co.* v. *Cahill*, 18 id. 484; *Parsons* v. *Platt*, 37 id. 563; *Hamlin* v. *State*, 48 id. 92; *Hart* v. *Brainerd*, 68 id. 50, 52; *State* v. *Brockhaus*, 72 id. 109.

In the present case the application sets out in full the testimony on the former trial, and states the newly-discovered testimony as it will be given by witnesses named. No question is made as to due deligence in discovery. The fact that the testimony detailed is the testimony given at the former trial and that the witnesses named will testify as stated, is admitted by the demurrer. The court before which the first trial was had, upon the facts thus presented for its consideration, refused to grant a new trial. That action cannot be reviewed, unless it appears that the court plainly abused its discretion or misjudged the limits of its discretionary power. The substantial claim of the petitioner is that the denial is not an exercise of legal discretion, but is based on a misapprehension of the real questions in issue, and the relevancy of the newly-discovered testimony to the controlling issue in the case. It is difficult to distinguish this claim from a mere objection to the result reached by the trial court in the exercise of its discretion. Assuming, without deciding, that the claim presents a reviewable question, we think that it is not well founded.

The case is this: The petitioner was prosecuted, with Carey and Hill, for a conspiracy to cheat and defraud John Griffin of $1,700 of his money, by means of certain fraudulent devices. The information alleged that this money belonged to Griffin as part of the proceeds of a check for $2,500, pay-

able to the order of Griffin, given by a life insurance company in payment of a policy for that amount on the life of Griffin's son, Michael P. Griffin, which had been procured by and through the defendants and assigned by Michael P. to John. The fraudulent devices set forth consisted of acts and conduct of the defendants in preparation and arrangement for an interview between John Griffin and the three defendants at the Adams House in Bridgeport, and their acts and conduct at that interview, whereby Gannon and Carey obtained $1,700 of the $2,500 belonging to Griffin, and he was cheated and defrauded of the same. Among the acts specified were assertions at this interview, by Gannon and Carey, of unfounded claims by each, against Griffin, for the payment of money amounting to $1,700, and an assertion that the policy was fraudulently obtained from the company and that Griffin, as well as the defendants, were liable to imprisonment for the crime. Hill was acquitted, and Gannon and Carey were convicted of the conspiracy charged.

Upon the trial it appeared by documentary and other evidence, undisputed by the defendants, that the policy was issued upon the application of Michael P. Griffin, and procured through Hill, an agent of the company, and by Carey, a soliciting agent, who assisted Michael P. Griffin in preparing his application, and that Gannon, a cousin of Griffin who was then living at Gannon's home, advised Griffin as to the kind of policy he had better take out, and furnished him with the money to pay the first premium necessary to secure the delivery of the policy. It was also undisputed, that the check to Griffin's order was given and was cashed, and the money was in the hands of Hill as the property of Griffin; that the interview at the Adams House was held; that Gannon and Carey asserted claims against John Griffin amounting to $1,700 and upwards, and, as the result of what there took place, carried away with them $1,700 of said money. Griffin was an ignorant man, who could neither read nor write, and lived upon a small farm in the country.

The proof of the conspiracy depended on the inferences to be drawn from the undisputed facts, in connection with

the means used to obtain from Griffin written authority to get the check cashed, and the evidence as to what actually took place at the interview at the Adams House. This evidence consisted mainly of the testimony of John Griffin on the one hand, and that of Gannon and Carey on the other. If Griffin's story were true, the offense charged was proved; if the stories of Gannon and Carey were true, there might be a reasonable doubt. The truth of Griffin's story hinged largely upon the character of the claims against Griffin put forward by Carey and Gannon.

The whole testimony of Gannon and Carey, notwithstanding many direct denials, tends strongly, in view of the conceded facts in the case, to strengthen the testimony of Griffin.

The newly-discovered evidence has no direct bearing upon the main contentions of the trial. During Gannon's cross-examination he was asked if in September, some two months before the issue of the policy, one Dr. Lynch had not told him that Michael Griffin had consumption, and answered, " No." The question was asked and admitted to test the credibility of the witness. In rebuttal the State called Dr. Lynch, who testified that in September preceding the issue of the policy he told Michael Griffin that he had consumption, in the presence of the defendant Gannon. Dr. Lynch was directly contradicted by Michael Gannon and his brother, Edward, whose testimony was somewhat corroborated by three other witnesses.

The newly-discovered evidence is wholly confined to furnishing additional testimony in contradiction of this statement of Dr. Lynch. Gannon claims that Dr. Lynch's statement touches a material and controlling issue in the case, because it tends to show that he, Gannon, before the issue of the policy, had reason to believe that Michael Griffin suffered from consumption, and this knowledge tends to show that the policy was fraudulently procured, and the fact of a fraudulent procurement tends to prove the guilt of the accused.

The fraudulent procurement was not a fact in issue, and

no evidence to prove that fact was received. It is true that the possibility, or even probability, of a fraudulent procurement is necessarily suggested by the undisputed facts in the case, as well as by the controverted facts. The Griffin boy, twenty years of age, unable to pay his first premium, insures his life for $2,500, immediately assigns it to his father at the suggestion of Gannon, and dies of consumption within three months. Gannon and Carey produce unfounded claims against the father, suggesting that the policy was fraudulently procured and he as well as themselves was liable to punishment, and obtained two thirds of the amount paid on the policy.

The possibility of fraudulent procurement could not be excluded from such a case; it was necessarily there, and might be considered by the jury, as well as other possibilities involved in proving the main issue, in reaching their final conclusion upon the question of guilt or innocence. But the existence of this possibility of fraudulent procurement is not strengthened by the incidental proof of Gannon's knowledge of his cousin's illness two months before the policy was issued, nor weakened by the absence of such proof. With or without such proof, it is in the case with equal certainty. Moreover, the inference of Gannon's knowledge is not materially weakened by the newly-discovered evidence. Without that, it appears that for some time during September young Griffin was living with the Gannon family, including the plaintiff, his mother, two brothers, and a sister; that while there he was ill and was treated by Dr. Lynch; that on one occasion he was accompanied by the plaintiff, on another by his brother, Daniel, who paid the consultation fee; and that Lynch told young Griffin and the plaintiff that the illness was consumption.

The newly-discovered testimony is that of Lynch himself. (The other evidence mentioned is wholly immaterial except as confirming Lynch.) He will testify that his opinion was not expressed to young Griffin and the plaintiff, but instead to Griffin and the plaintiff's brother Daniel, who accompanied Griffin to the consultation that took place next after the

opinion was formed, and that he did not make such communication to the defendant prior to the issue of the policy. As affecting Lynch's denial of the specific statement made by Gannon on his cross-examination, that Lynch did not tell him of his cousin's illness, the newly-discovered evidence may be material, but obviously no ground for a new trial; but as affecting Gannon's knowledge of his cousin's illness, it is of comparatively slight importance. The inference that the plaintiff, Gannon, as well as the other members of the household, knew of young Griffin's illness, for the treatment of which he was sent to Dr. Lynch under charge of different members of the family, is almost irresistible, and cannot be greatly weakened if Dr. Lynch's opinion as to the disease was expressed to Griffin and Daniel, instead of to Griffin and Michael.

The after-recollection of a witness as to some fact omitted from his testimony, or incorrectly stated, is not ordinarily sufficient ground for a new trial. This rule was applied in *Shields* v. *State*, 45 Conn. 266, 270, and that case would seem to govern the present one.

We deem it clear that the denial of a new trial does not involve any misapprehension as to the real issues in the case, or the relevancy of the newly-discovered evidence to those issues, or any erroneous application of legal principles ; and upon reading the testimony upon the former trial, in connection with the new testimony produced, we are satisfied that no injustice is apparent, and that the newly-discovered evidence is insufficient to render a different result upon a new trial probable.

The denial by the trial court is clearly an exercise of its lawful discretion, and cannot be reviewed upon this appeal, which is in the nature of a motion in error.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.