### LOCKWOOD *against* JONES:

#### IN ERROR.

*A.*, having brought an action of book debt against *B.* in the county court, recovered a judgment in that court against *B.*; whereupon *B.* appealed the cause to the superior court, and *C.* entered into a recognizance, that *B.* *should prosecute his said appeal to effect, and answer all damages in case he should make not his plea good.* In the superior court, *B.* recovered a judgment, in the cause so appealed, against *A.*, for damages and costs. At the same time, *A.* filed his petition for a new trial, which was granted; and, on a second trial in the superior court, *A.* recovered judgment for damages and costs against *B.*, for which execution issued against *B.*, and was re-

*Fairfield,*
June, 1829.

Lockwood
*v,*
Jones

turned *non est inventus.* In a *scire-facias* brought by *A.*, against *C.*, on his recognizance, it was held, that such recognizance was not discharged, by the first judgment in the superior court, but that it extended to the judgment ultimately recovered by *A.*, and consequently, that *A.* was entitled to recover.

THIS was an action of *scire-facias,* stating the following case. *Horatio Lockwood,* the present plaintiff, brought an action of debt on book against *Lewis S. Lockwood,* to the county court of *Fairfield* county, held in *February,* 1822, which, by continuances, came before the same court, in *February,* 1823 ; at which court he recovered judgment in such action against the defendant therein ; who appealed the cause to the superior court, held at *Danbury,* on the fourth *Tuesday* of *September,* 1823 ; and on such appeal, *Enos Jones,* the present defendant, entered into a recognizance, in the sum of 200 dollars, payable to the plaintiff, if the appellant should fail to prosecute his said appeal to effect, and answer all damages in case he should make not his plea good. The cause appealed was entered in the docket of the superior court, and came, by continuances, to the term of that court in *September,* 1824, when the said *Lewis S. Lockwood* recovered judgment against the plaintiff for 158 dollars, 77 cents, damages, and —— costs. At the same court, the plaintiff filed his petition for a new trial of the cause, which was continued to *December* term, 1826, when it was granted. The plaintiff's action of debt on book again came to trial before the superior court, in *September* 1827, when he recovered judgment against the defendant in that action, for 324 dollars, 25 cents, damages, and for 351 dollars, 96 cents, costs. Execution having issued on this judgment, it was returned *non est inventus ;* the judgment remains unpaid and in force ; *Lewis S. Lockwood* is a bankrupt ; and this *scire-facias* is brought against the defendant to enforce his recognizance on the appeal.

In bar of this action the defendant pleaded the judgment of the superior court, rendered for *Lewis S. Lockwood* in *September* 1824, concluding thus : " And so the said *Lewis S.* did prosecute his said appeal to effect, and did make his plea in said action good." To this plea the plaintiff demurred. The court adjudged the plea sufficient ; and now, on motion in error, by the plaintiff, the record is brought before this Court, to revise that decision.

*Sherman,* for the plaintiff, contended, That the judgment re-

covered by *Lewis S. Lockwood*, in the superior court, *September* term 1824, did not, under the circumstances of this case, fulfil the condition of the recognizance, entered into, on the appeal, and discharge the recognizors. This point depends on the question, whether the suit in which the plaintiff recovered judgment in *September* 1827, was the *same* suit in which the recognizance was given. If it was, *Lewis S. Lockwood* manifestly failed to prosecute his appeal to effect and to make his plea good. After the granting of a new trial, no new suit is instituted. There is no new writ, or declaration, or duty, or service. If the process was by attachment, or if the plaintiff lived out of the state, no new bond for prosecution is necessary. If the cause has been appealed from a lower court, no new recognizance on the appeal can be required. If the bond or recognizance originally given, does not extend to the ultimate judgment rendered, the adverse party is deprived of his security ; and this without any reason for its discontinuance, arising from the nature of the case, or from any fault on his part. A judgment vacated clearly furnishes no reason for depriving the appellee of his security. Nor is any fault to be imputed to the appellee, that the vacated judgment was against him ; for if he had been in fault, a new trial would not have been granted.

The case of bail is not at all analogous to the present case. Every thing which discharges the principal from the custody of the bail, discharges the bail from his obligation. Now, a judgment in favour of the principal absolves the bail, because the string is thereby cut, by which the bail held the principal. The setting aside of that judgment and the rendering of a different judgment afterwards, do not repossess the bail of the principal. His security is gone forever. This is not the situation of a bondsman on an appeal. He has the same powers and remedy after the first judgment as before.

The counsel then proceeded to anticipate and answer objections. He commented particularly on the case of *Ainsworth* v. *Peabody*, 1 *Root* 469. insisting, that it was entitled to no consideration as an authority, as there was no adjudication in the case, but a mere intimation of an opinion, which induced the plaintiff to withdraw his action. He adverted also to the law of *Massachusetts*, contending that it had no bearing on the contract of the defendant in this case.

*Fairfield,*
June, 1829.

Lockwood
*v.*
Jones.

*Fairfield,*
*June, 1829.*

Lockwood
*v.*
Jones.

*Hawley,* for the defendant, contended, That *Lewis S. Lock-wood,* by recovering judgment on the first trial in the superior court, had fulfilled the condition of the recognizance and discharged the bail. That judgment was a termination of the suit. The proceeding might, indeed, be *revived,* by the granting of a new trial; but the prevailing party had prosecuted to effect and made his plea good. A judgment so recovered, has always been considered a *final* judgment. *Fleming* exr. v. *Lord,* 1 *Root* 214. *Butler* v. *Bissel,* 1 *Root* 102. *Ainsworth* v. *Peabody,* 1 *Root* 469. 2 *Swift's Syst.* 175, 6.

New trials in this state were originally granted by the General Assembly only, as an exercise of its *equitable* powers. 1 *Swift's Dig.* 786. It was, in reality, a mere interference of a court of chancery. The judgment at law, was, in all respects, *final.* If unrighteous, a new trial was the relief, which chancery would afford. The *nature* of a new trial, since the courts of law have been authorized to grant it, is not changed. It is still a mere equitable interposition.

*Ainsworth* v. *Peabody,* 1 *Root* 469. is a case directly in point. Though no judgment was rendered in the suit, yet it is apparent, that the court considered the question as then *at rest.* The opinion expressed by them has been considered as settled law ever since—a period of nearly forty years.

The rule contended for, by the plaintiff, will, in many instances, produce great hardship and inconvenience. After judgment for the principal, the surety gives up his security;—or the principal becomes insolvent, or removes out of the state; towards the close of the three years limited for that purpose, a petition for a new trial is brought and granted; ought the surety to be still holden? So in the case of bail; he is lulled to sleep by the judgment in favour of the principal; he lets his security go, or the principal absconds; is he to be subjected three years afterwards? *Bingham* v. *Pepoon,* 9 *Mass. Rep.* 339. *Clapp* v. *Bell,* 4 *Mass. Rep.* 99.

Where land is attached, the execution must be levied within four months after the first judgment recovered by the plaintiff. Suppose the plaintiff lets the four months expire, but within three years gets a new trial, and recovers greater damages; his original attachment or lien certainly does not continue.

Judge *Gould,* in his lectures to his students, states the law thus: " A judgment in favour of the appellant is final as to the surety on appeal, though on a new trial, judgment is given for the other party." *M. S.*

" A. sues B., for whom C. gives bonds; verdict for B.; A. then obtains a new trial. Now, C. was discharged, by the first verdict. The new trial is granted as a favour to A.; and he must submit to the inconvenience of having no security for B.'s appearance." *Reeve on New Trials.*

HOSMER, Ch. J. The principle of the defence set up to this action, is simply this; that the judgment recovered by *Lewis S. Lockwood* was not only a final judgment as contradistinguished from one that is interlocutory, but was *the* final judgment, which fulfilled the stipulation of the recognizance; and by recovering it, that he, within the true intent and meaning of the defendant's contract, had prosecuted his appeal to effect, and made his plea good. On the other hand, the plaintiff insists, that it was not the final judgment on which the recognizance was suspended; but that both by the letter and spirit of the contract, the judgment referred to in the bond, was the *last* or *ultimate* final judgment in the suit.

The construction of the contract advanced by the plaintiff, is, in my opinion, correct. This will appear from the words of the contract, construed with reference to its subject matter. It will be my purpose to establish this proposition, and then to answer the analogies, determinations and supposed consequences of the construction urged by the defendant.

1. In the first place, what is the fair intendment of the recognizance arising from its words? Before my answer is given to this question, I observe, that the defendant is a surety, and as such is never answerable beyond the clear scope of his engagement. *Ludlow* v. *Simond,* 2 *Caines Ca. Err.* 1. *Elmendorph* v. *Tappen* & al. 5 *Johns. Rep.* 176. *Walsh & Beekman* v. *Bailie,* 10 *Johns. Rep.* 180. *Wright* v. *Russell,* 3 *Wils.* 530. 2 *Wms. Saund.* 415. n. (5). *Smedes* v. *The Utica Bank,* 20 *Johns. Rep.* 372. 383. But to the extent of his contract, expounded by the expressions employed and the object intended, he is responsible.

I further remark, that neither from my own experience, nor from enquiries made of others, do I find, that there has been any practical exposition of the matter in question.

The words of the recognizance, taken in their established popular meaning, are clear and unambiguous. The bond was broken, *if the appellant did not prosecute his appeal to effect, and make his plea good.* The word *plea,* as used, is obviously

*Fairfield,*
June, 1829.

Lockwood
*v.*
Jones.

commensurate with the term *defence;* in converting the nega-
tive stipulation into its correspondent affirmative, it necessari-
ly comprises this position ; *that the appellant shall effectually
prosecute his appeal.* In other words, that at the final termin-
ation of the controversy between the parties, he shall be suc-
cessful in his defence ;—not that at some period of the contest,
he shall obtain a judgment, erroneously and against the merits
of his case, which shall appear to be final, in the strict sense of
the term, but that ultimately his defence shall be crowned
with success.

The words, unquestionably, reach to this extent; and their
construction is made indisputable, by two clearly established
principles. The first of them is, that if there be any ambigui-
ty, the words of a contract shall be expounded most strongly
against the contractor. *Verba fortius accipiuntur contra præf-
erentem.* But without a recurrence to this principle, the result
will be the same. It is well established as a rule of construc-
tion, that an indefinite or general expression, shall be under-
stood *universally, or according to the full latitude of its terms,*
unless restrained by some special subsequent words, or by the
subject matter of the contract. *Co. Litt.* 42. *Shep. Touch.*88.
1 *Sw. Dig.* 226. Now, the stipulation in the recognizance is
general and indefinite ; the full latitude of its terms alludes to
and embraces the last or *ultimate* final judgment in the suit ;
it is not restrained by any subsequent words ; nor, as I shall
show hereafter, by the subject matter of the engagement. A
limitation of the meaning may be supposed, on a principle not
contended for ; and that is, that after a new trial is granted,
the original suit, in contemplation of law, is at an end, and a
*new* suit is substituted. But the opposite of this is true. A
new trial vacates the judgment complained of, and puts the
parties in the state, in which they were, immediately before the
judgment was rendered ; *and this is its whole effect.* The orig-
inal suit is entered in the docket, and the first and only cause
of action, on the first and only writ, is tried again, at a future
day. By the operation of the new trial, the cause, in contem-
plation of law, is precisely in the same condition, as if no judg-
ment had ever been rendered ; so that the action is, in no
sense, *new,* but is identically the original suit. *Fleming* exr. of
*McDonald* v. *Lord,* 1 *Root* 214. *Magill* v. *Lyman* & al. 6
*Conn. Rep.* 59. *Lyman* v. *Magill,* 6 *Conn. Rep.* 69. The
error is extirpated, and every thing else is in *statu quo.*

2. The extent of the words being unquestionable, I will now *Fairfield,* consider the recognizance, in reference to its subject matter. June, 1829. What was the object of the parties ; or in other words, what was the spirit and intent of the contract ?  I answer ; *it was security for all the costs that should arise, by reason of the appeal, and until the termination of the plaintiff's suit.*

*Lockwood*
*v.*
*Jones.*

This is proved, by the expression of the contract, already discussed ; the most convincing evidence of the intent.

It is equally established, by the reason and nature of the case.   By a judgment against the appellant, he, *prima facie,* was a debtor, and in the sum assessed ; and the legislature have thought it unreasonable, that the judgment debtor should be allowed an appeal, and a rehearing, without giving bonds to secure to the adverse party, his costs of suit.   A recognizance suspended on the condition, that the appellant should prosecute his suit to a *temporary* effect, and that, at some period of the cause, he should erroneously obtain a final judgment in his favour, that would not be the *ultimate* termination of it, would almost seem ludicrous.   It is admitted to have been the right of the plaintiff to demand, and the duty of the appellant to give, security for the costs, if the plaintiff should prevail against him. But if his recognizance was to secure any costs to the plaintiff, what reason can be assigned, why the whole costs, at the termination of the controversy, should not be made sure ?   All the costs are within the same reason.   The reason was, *that the plaintiff should be dragged no farther in controversy, unless his costs were made secure.*   Less than this, would not attain the only conceivable object of requiring bonds ; for, there is the same reason for security of the whole of the costs, that there is, for the security of part of them.   And that a judgment rendered for the appellant, and afterwards set aside for error, *because it never ought to have been rendered ;* that this nullity in law, which was always unjust, and against the merits of the case, should be followed up, by stripping the injured plaintiff of his security, and giving an important benefit to the appellant, is peculiarly unfounded.   Not less strange does it appear, that a recognizance to secure the plaintiff his costs, should be suspended, by the parties, on an event, to happen *in the midst of their controversy ;* and not at its termination.   It is said for the defendant, that it would be unjust to hold him responsible, after he had once obtained a final judgment in his favour ; and that, therefore, such a construction of the recognizance, would be irrational.   If, said he, I am held beyond this period, so

that at any time within three years, a new trial is obtained, and judgment for the plaintiff, my security, if I ever had any, is gone. The property, for instance, delivered to me for my indemnity, is given up, and however reluctant I might be, I was bound to surrender it ; and even if there was no *actual* security given, my responsibility, is unjustly prolonged.

This, the principal argument of the defendant, admits of two obvious and sufficient answers.

The first is, that the person recognizing, never need be in the condition supposed. He can always guard himself, by a competent indemnity. If he is unwilling to confide in the personal responsibility of his principal, he may demand property, *with such stipulations* as will effectually protect him, until the possibility of damage has passed by. The indemnity, if taken out of his hands, is occasioned by his own neglect, by his not guarding himself, and subjecting it to a lien, until the three years have elapsed. There is neither impossibility nor difficulty in the case.

I reply, secondly, that the contract and condition of the defendant, are *altogether voluntary.* He foresaw the legal possibility of the facts, which have happened in this case, and entered into a recognizance, on such security as he pleased. It is a law maxim, *Volenti non fit injuria.* In the case of ex parte *Garland,* (10 *Ves.* jun. 110.) in which the inconveniences to an executor, authorized by last will to carry on a partnership, were strongly pressed, and admitted by Lord *Eldon* ; he contented himself with this, as a conclusive answer, that he *voluntarily* put himself in such condition. The same principle was adopted, and by this Court applied, in a similar manner, in *Pitkin* v. *Pitkin* & al. 7 *Conn. Rep.* 307. There is, then, no hardship in the case ; as the bondsman has the full benefit of his contract, and is subjected only to his voluntary engagement.

To the supposed consequences pressed on the defendant's part, let the effect of the construction advanced by him, on the plaintiff, and on others in like situation, be attended to. In the first place, the plaintiff has taken all the security the law admits, by the acceptance of a recognizance, expressed in the most sweeping and unlimited terms. Now, if a final judgment, set aside and not ultimately final, extinguishes the bond ; a judgment erroneous, against the merits of the case, and for that reason vacated ; the plaintiff is unjustly deprived of the secu-

rity, for which the recognizance was given. He has been sub- *Fairfield,*
jected to great costs; the appellant is a bankrupt; the plain- June, 1829.
tiff ever had a just cause of action, and by error only had it   Lockwood
doubted, for a short time; and yet of his security he is utterly   *v.*
defeated! What construction can be more hard and unjust?   Jones.

When the general operation of the defendant's principle of
exposition is regarded, it becomes thé more exceptionable. It
applies to bonds for prosecution in all cases, whether given by
a plaintiff in commencing his suit, or by an appellant. On the
principle advanced by the defendant, if the plaintiff recover a
final judgment in the superior court, which is afterwards va-
cated for error, the defendant has lost his security for costs.
The doctrine, for aught that I can see, is equally applicable to
motions for new trials, as to petitions. By our practice, judg-
ment is not *suspended,* as it is in *England* and elsewhere, by a
motion for a new trial; (3 *Bla. Comm.* 387, 395. 2 *Tidd's
Prac.* 813. & seq.) but final judgment is first actually ren-
dered, and after this, the motion is allowed. Hence, by a gen-
eral rule of this Court, of *June* 1810, (4 *Day* 468.) execution
only is stayed; and by the rule of *July* 1809, (4 *Day* 120.) if a
new trial is not granted, interest is directed to be computed on
the judgment already rendered. Now, if a final judgment, al-
though afterwards vacated on motion, extinguishes a bond for
prosecution, it is easy to perceive, that the consequences may
be both extensive and pernicious.

On the whole, I entertain no doubt that the argument *ab in-
convenienti,* derived from the hardship of the construction,
greatly preponderates against the defendant. I am also of
opinion, that this consideration has been pressed altogether be-
yond its proper bearing. *Jura adaptantur ad ea quœ fre-
quentius accidunt.* The question discussed will seldom arise.
In my experience and observation, it never has arisen, until the
present case.

3. I will now attend to the analogies and decisions, on which
the defendant has placed reliance.

The determinations regarding *special bail,* have been first
referred to; and an analogy between these and bonds and re-
cognizances for prosecution, has been much insisted on. In
this state, it has been decided, that an erroneous judgment re-
versed for error, or annulled by the granting of a new trial, is
*the final judgment* for the exoneration of bail. *Fleming,* ex'r.
of *Mc Donald* v. *Lord,* 1 *Root* 214. *Butler* v. *Bissel,* 1 *Root,*
102. 2 *Swift's Syst.* 175, 6.

*Fairfield,*
June, 1829.

Lockwood
*v.*
Jones,

The law I admit; but the analogy I deny. What is meant by an analogous determination? Not merely a remote resemblance, but such a real similitude, that the cases compared stand on the same reason. In comparing recognizances for prosecution, whether of an action or an appeal, with bail to the action or special bail, the mind is naturally led, first, to consider the expressions in which the respective bonds are conceived. The bondsman for prosecution stipulates, that his principal shall prosecute his action or appeal to effect, and answer all damages, if he fail to make the same good; while he who becomes special bail, merely contracts, that his principal shall appear in the action and abide final judgment. *Tidd's Pract. Forms* 74. The one who binds himself in a recognizance for prosecution, agrees, on a certain event, to pay a sum of money; but the bail merely agrees to surrender the body.

The words of these bonds are very dissimilar. The great discrimination, however, between the cases, consists in this. The bondsman for prosecution has no indemnity, except what arises out of contract between him and his principal; and *the law never interposes to make this security less.* But the bail has a legal indemnity; his principal is presumed to be in his custody; he may take him when and where he pleases, and detain him or surrender him in court, or into the custody of the sheriff, who has process against him; or if he believes, that he meditates flight, he may cause him to be imprisoned in the common gaol of the county, and exonerate himself from his obligation. *Parker* v. *Bidwell,* 3 *Conn. Rep.* 84. *Ruggles* v. *Corey,* 3 *Conn. Rep.* 419.

In the event of a final judgment in favour of the principal, he is not, by law, taken out of the custody of his bondsman for prosecution; *for he never was in his custody;* but in such case, the principal is, by law, taken out of the custody of his bail; the string is severed, and the right of the bail over his principal, is at an end.

Here then, is a marked dissimilarity between the cases. The technical final judgment, before the termination of the suit, ought not, in any respect, to impair the right of the bondsman for prosecution; but by this event, the right of the bail over his principal, is destroyed. He has stipulated to surrender him; but the law steps in, and makes the surrendering of the principal, by the bail, *impossible.* After this, the law is not so unjust, as to require of the bail, to perform an impossibility

of its own creation, but it effectually protects him, by its estab- *Fairfield,*
lished principle; that, " in all cases, where a condition of a June, 1829.
bond, recognizance, &c. is possible at the time of the making
of the condition, and before the same can be performed, the
*condition becomes impossible,* by the act of God, *or of the
law,* &c., there the obligation &c. is saved." *Co. Litt.* 206. *a.*
2 *Bla. Comm.* 341. On this principle, unquestionably, the be-
fore cited determinations in favour of bail, are founded.

Now, I ask, where is the analogy ? *The act of law* has
taken from the bail his security ; but at the same time, has
made it unnecessary, by his exoneration. But, in the case of a
bond for prosecution, the law has neither taken away, nor im-
paired the bondsman's security; and therefore, it has not dis-
charged him from his obligation. There is, then, no analogy,
but a marked discrimination between the above cases.

The determinations cited for the defendant, from the state of
*Massachusetts,* have not any bearing on this case. It is true,
that they give the meaning of the expression *"final judgment,"*
as used in certain of their statutes. But it must be recollected,
that " final judgments, (strictly speaking,) are such as put an end
" to the action ;" (3 *Black. Comm.* 398.) and yet when they pro-
nounce on the merits of a cause, they are technically final, as
contradistinguished from judgments, which are interlocutory,
although the cause is not terminated. In this latter sense, the
judgment of a county court, on verdict or demurrer, is final;
and yet by appeal, the cause is carried up for rehearing, *ut res
nova.* Now, when the expression *final judgment,* is found in
a statute, it is always the subject of enquiry, in which of the
two former senses the terms are used. In the cases cited, from
the words, the subject matter, the effects and consequences,
and in one of them, from the antecedent and now varied ex-
pressions of the same law in substance, the court was of opin-
ion, that by *final judgment,* a judgment technically final was in-
tended, although it did not terminate the cause. To derive
any aid from these decisions, it becomes necessary to show,
that the reasons and principles of construction were identical
with those which apply to this case. *Clapp* v *Bell,* 4 *Mass.
Rep.* 99. *Swett* & *al.* v. *Sullivan,* 7 *Mass. Rep.* 342. *Bing-
ham* v. *Pepoon & al.* 9 *Mass. Rep.* 339. But, on recurrence
to the determinations, it will be found, that they are altogether
different. I forbear to add to my reasons, a comment on the
cases ; nor is it necessary. Those who would press the deter-

Lockwood
*v.*
Jones.

*Fairfield,*
June, 1829.

Lockwood
*v.*
Jones.

minations into their service, are bound to show their applicability to this case, which, in my judgment, cannot be done. For it is certain, that the words *final judgment* in any law, do not *per se* settle the enquiry, in which of two established senses, they were used.

With some surprise I have heard the citation of determinations in *Westminster-Hall* concerning bail in error. On writ of error in *England*, bail is required, with condition to prosecute *the action* to effect. It is observable, that the bail *is not* to pursue to effect all writs of error, which may in future be brought, to revise the same subject ; but it expressly is, to prosecute *the specific action*, in which the bond is given. 2 *Tidd's Pract.* 1074. Hence, it is established law, if the judgment of the common pleas is affirmed, on error brought to the king's bench, or the exchequer chamber, that on a writ of error preferred to the house of lords, the recognizance on the former writ is no security for the costs in the latter ; and why ? Because the bond was given, in so many words, to secure the costs, on the first writ of error only ; and the second and future writ must derive similar security from a new bond, given for that purpose. The question before us, is, whether a final judgment of the superior court, in the technical sense of the terms, which has been vacated for error, and thus effectively struck out of existence, is matter in bar of a judgment, afterwards rendered *in the same suit*. But the enquiry in *Westminster-Hall*, in the cases alluded to, was merely this ; whether a bond for prosecution of one suit, was in law, a bond for the prosecution of a future, contingent, and different suit. The question, which of two final judgments *in the same suit*, the one technically final and reversed, and the other actually final and existing, never occurred in *Westminster-Hall*. The cases are *toto cælo* different. The *English* determinations, are alone applicable to cases like the following. A writ of error is brought to the superior court from the determination of the county court, and the judgment below is affirmed. Error is then brought in the Supreme Court of Errors, to revise the decision of the superior court. Now, if a question is made, whether the bond given to prosecute the first writ of error, is a bond for the prosecution of the second writ of error, the law of *Westminster-Hall* is in point ; but it bears in no other direction.

4. The case of *Ainsworth* v. *Peabody*, 1 *Root*, 469. has been

cited for the defendant ; and I admit, that the opinion thrown out by the court, while the cause was on trial, (for there was no decision,) is in point. The appellant recovered in the case cited, and afterwards a new trial was granted, and final judgment was rendered in favour of the appellee. The court expressed an opinion, that by the first judgment in behalf of the appellant, his bondsman was exonerated. Immediately on this, the plaintiff withdrew his action. I cannot consider this case, as possessing any authority. In the first place, there was no determination, but a mere opinion expressed, and apparently with little deliberation. Independent of this, however, the opinion was solely founded on the case of *Butler* v. *Bissell*, 1 *Root*, 202. in which it was held, that *bail* is exonerated by a final judgment in favour of his principal, although the judgment was afterwards reversed for error. In this case, there *was not bail*, but a bond for prosecution, neither expressed in the same language as a bail bond is, nor founded on the same reason. The court hastily conceived there was an analogy where no analogy exists ; and from the report it appears, that there was no argument of counsel, and no discussion by the court. I trust it has been shown, that the ground assumed by the court was entirely fallacious.

On the whole, I am clear, that, by the words, and spirit, and intent of the contract, bonds of prosecution are suspended, on the last or ultimate final judgment of the court ; that this opinion does not outrun the equity of the case ; that public convenience requires it, inasmuch as the costs of a suit, in the instances prescribed by law, ought to be made secure throughout, and until its termination, especially as the party has done his utmost to secure himself, by taking a bond in the most unlimited and comprehensive terms ; and finally, as the bondsman has given a recognizance, which, *in terminis*, authorises the plaintiff's demand.

The plea, therefore, in this case, is, in my view, manifestly insufficient, and the judgment below, erroneous.

PETERS, J., though inclined at first to a different opinion, ultimately concurred.

DAGGETT, J. The only question is, whether the recognizance entered into by the defendant, is discharged by the first judgment of the superior court ; and manifestly, that must de-

*Fairfield,*
*June, 1829.*

Lockwood
*v.*
Jones.

pend on the decision of another question, *viz.* whether the judgment of the superior court rendered in *September,* 1824, in the case of *Horatio Lockwood* v. *Lewis S. Lockwood,* was a *final* judgment.   I shall attempt to shew, that it was ; and that the recognizance was thereby discharged.

Here I would premise, that it is a principle well established, that " bail is highly favoured in law, and statutes for their saving should be liberally expounded."

It is conceded by the counsel for the plaintiff, and by my brethren who constitute a majority of the Court, that the *special bail* is discharged the moment the first judgment in chief is rendered for the defendant ; and that the lien on land and personal property created by attachment, is removed by such judgment in favour of the defendant.   It is also agreed, that if the principal had pledged money or any other property with the surety, to indemnify him for becoming bound as special bail, or for prosecution, or for an appeal, it must be returned to the pledgor, on the rendition of a judgment in chief; and if it be not so returned, an action will *immediately* lie in his favour against the pledgee.   These principles were conceded in the argument, and are not now denied.   They have been too long established to be questioned.   *Butler* v. *Bissel,* 1 *Root* 102. *Fleming* exr. of *McDonald* v. *Lord,* 1 *Root* 214.   2 *Swift's Syst.* 175, 6.   *Clap* v. *Bell,* 4 *Mass. Rep.* 99.   *Bingham* v. *Pepoon* & al., 9 *Mass. Rep.* 339.   Their force and application to this case are attempted to be evaded ;—with what reason I shall shew hereafter.

In *Clap* v. *Bell,* 4 *Mass. Rep.* 99. the plaintiff brought a writ of replevin, to replevy certain chattels, which the defendant, who was a deputy-sheriff, had attached as the property of the plaintiff.   It was proved, that *Brazier* and *Davis* commenced a suit against *Clap,* in *February,* 1803.   On the 8th of *January,* 1806, a verdict was given for *Clap* in that suit, and judgment thereon was rendered for costs against the then plaintiffs.   On the 13th of *February* then following, *Brazier* and *Davis* sued a writ of review of that judgment, which was served on *Clap,* on the 21st of the same *February,* and was pending when this suit in replevin was brought.   *Clap* sued the writ of replevin, on the 15th of *October* 1806, having previously demanded the goods of *Bell,* the deputy-sheriff, who refused to deliver them, but held them, by direction of *Brazier* and *Davis,* they claiming a right to hold them under the attach-

ment until the determination of the review. The counsel for *Fairfield,* the defendant contended, that a review was a *continuation* of June, 1829. the original suit,being confined to the same pleading &c., and not an original suit. They likened it to a judgment of an inferior court, from which there lies an appeal, in which case goods attached are still holden to respond the judgment of the court having the appellate jurisdiction. *Parsons,* Ch. J., in delivering the opinion of the Court, says : " We are all of the opinion, that when goods or estate are attached, by virtue of an original suit, to secure the judgment which the plaintiff may recover, if on the appeal, judgment be rendered for the defendant, the attachment is *ipso facto* dissolved, and the sheriff can no longer hold the property attached against the demand of the defendant." There would seem to be some colour for the argument of the defendant in that case ; for by the law of *Massachusetts,* the plaintiff has *a right* to review his cause,and have it tried a second time. Our petitions for new trials are original suits to all intents and purposes, and a new trial is never granted of course, or *ex debito justitiœ,* as will be more fully shewn hereafter.

The same doctrine was holden, by the supreme court of *Massachusetts,* in the case of *Swett* & al. v. *Sullivan,* 7 *Mass. Rep.* 242. This was a suit against the defendant as special bail for *Abraham Ogden.* The defendant *Ogden* prevailed on the first trial ; the plaintiff reviewed the cause, and obtained judgment for a large sum against *Ogden ;* and then instituted his *scire-facias* against *Sullivan* as his bail. *Parsons,* Ch. J., in giving the opinion of the court, says : " If the *final judgment* mentioned in the last statute [1786. *c.* 66. *s.* 1.] should be taken to be the judgment on review, great mischiefs would be the consequence. Either party might review at any time within two years after entering judgment on the appeal. The bail might, therefore, be holden for several years, when the situation and property of the principal might be essentially changed ; and a party arrested might find it impracticable to procure bail." *P.* 347, 8. And again : " It is therefore our opinion, that the *final judgment* mentioned in the statute of 1784, [*c.* 10. *s.* 3.] is the first judgment on which the plaintiff may sue out an execution. If no appeal lies from the judgment of the common pleas, or if none is made, that judgment is final ; or if there is an appeal, then the judgment on the appeal is final ; for on either of these judgments execution may issue." *P.* 348. The bail was held to be discharged.

Margin note: Lockwood *v.* Jones.

*Fairfield,*
June, 1829.

Lockwood
*v.*
Jones.

It is impossible for me to discover why these concessions and decisions are not binding as to the point now in judgment. Let me examine the recognizance entered into by the special bail, and compare its obligation with that entered into by the defendant on the appeal. The condition in the recognizance of special bail, is, "that the defendant [in the suit] shall appear and abide final judgment, and answer all damages in case he should not make his plea good." 2 *Swift's Dig.* 491, 2. On the appeal in this cause the recognizance set forth in the declaration has this condition : " That if the said *Lewis S. Lockwood* should fail to prosecute his appeal to effect, and answer all damages in case he make not his plea good," then &c. So the recognizance entered into, in a replevin of goods attached, is, that the plaintiff shall prosecute his suit of replevin to effect, and in case he make not his plea good, answer all damages, &c ; yet if the defendant recover a judgment in the suit on which the goods replevied were attached, all agree, and so is the case of *Clap* v. *Bell* above cited, the goods are discharged from the lien, and of course, the recognizance in the replevin is also discharged. If the obligation incurred is the same, and I beg, if it is not, that the difference may be pointed out, then a *final* judgment in favour of the party for whom the surety undertakes, will operate a discharge in all these cases.

It is however, said, that the recognizance for the appeal is more *extensive* than that of special bail. I still must be allowed to ask wherein ? How is this made to appear ? Do they not both depend on the question, whether the defendant has made his plea good, or in other words, whether he has obtained a *final* judgment ? But it is suggested, that a judgment may be *final*, so as to discharge the *special bail* and the *property attached*, and yet not be an *ultimate* judgment so as to discharge the recognizance on the appeal. An *ultimate* judgment, in my opinion, is not a judgment for which the surety is, or can be responsible ; for it is unknown in law. "Judgments," says Sir *William Blackstone*, " are either *interlocutory* or *final*. Interlocutory judgments are such as are given in the middle of a cause, upon some plea, proceeding or default, which is only intermediate, and does not finally determine or complete the suit." " Final are such as at once put an end to the action, by declaring, that the plaintiff has either entitled himself, or has not, to recover the the remedy he sued for." 3 *Bla. Com.* 396, 398. When the defendant recovered against the plaintiff, and the

plaintiff did not recover against the defendant, in *September* 1824, was not that judgment *final* within the definition above given? If then the defendant "makes his plea good," by a final judgment in his favour, is not the surety for him that he should "make his plea good," discharged? The objector says "yes, in case of special bail, but not in case of bail for the appeal." I ask, why not? I ask, is there not a *final* judgment? There is a *final* judgment, if Sir *William Blackstone* and Chief Justice *Parsons* knew what a *final* judgment was. But neither of them knew probably what in law language an *ultimate* judgment was; nor am I bound to understand it. Soon we shall have *penultimate* judgments. The granting of the petition for a new trial in this cause, which preceded the *ultimate* judgment, might perhaps be denominated a *penultimate* judgment: it was *almost* the last.

It is again insisted, that the reason why special bail is discharged, is, that he cannot surrender the principal in discharge of himself, as he might have done before final judgment: he has him not "upon the string." So, in the case of property attached, it can be *no longer* holden than till final judgment; and the law compels no man to do impossibilities. But may it not be asked, why the bail has not the principal upon the string? Why the property attached cannot be holden after final judgment? Why the surety in replevin is exonerated, when judgment is rendered in favour of his principal? Is it not because the judgment is a discharge of the principal; and the lien on the property is destroyed by it, and the surety in replevin has fulfilled the condition of his recognizance? Why then is not the defendant discharged, by *Lewis S. Lockwood's* having prosecuted his appeal to effect?

Is it after all to be said, that the recognizance for the appeal is *more extensive* than that entered into by the special bail; and the only reason assigned, is, that *it is* more extensive? An assertion that a proposition of this kind is true, may be always countervailed, by a contrary assertion, that the proposition is not true; and an enquiring mind waits for the reasons.

Again; by the statute (*p.* 63. ed. 1821.) it is provided, that in bonds given for the prosecution of an action or appeal, the surety or sureties shall be liable to satisfy the cost that shall be recovered against the principal, *if it cannot be had out of his estate.* An execution, then, must have been taken out against *Lewis S. Lockwood;* and the fact must be shewn

to the court, that the cost could not be obtained from him. This will not be denied. It is averred in the declaration, that an execution was taken out, and a *non est inventus* (as to property, and *that* was all that was necessary) regularly returned. But from *September* 1824 to *September* 1827, a period of three years, no execution could have been taken out against *Lewis S. Lockwood,* for this very substantial reason, that there was no judgment against him, but a final judgment in his favour; and yet while the principal was thus discharged, his bail, the present defendant, was all the time liable, or rather has, after the lapse of three years, during all which time the principal was discharged, now become liable, by the doctrine, I suppose, of a kind of *postliminium,* or perhaps *springing uses.* If there be a case in which the principal is discharged, and yet the surety is liable, I am ignorant of it. A surety, *ex vi termini,* is correlate, and cannot exist without a principal. No decision or *dictum* favours such an idea. Let it not be here said, that if the defendant, *Lewis S. Lockwood,* was discharged, yet he might be, and regularly was, subjected to the payment of all the costs, both antecedent and subsequent to the new trial. This is doubtless true, (unless the court had granted a new trial upon different terms, which it might have done) but it is obvious that this liability did not arise at all from the recognizance, but from his situation as defendant. He would have been equally liable, had no bond been given.

It has been further suggested, that if the doctrine for which I contend had been adopted, the bond for prosecution, for an appeal and for special bail will be discharged, on the allowance of a motion for a new trial. This objection is susceptible of a very easy and satisfactory answer. A *motion* for a new trial, is, in no respect, like a *petition* for a new trial. The latter is an original suit. A duty must have been paid upon it, before the late law abolishing all duties was passed. It must have been served on the adverse party; and it had not the effect of suspending the judgment or staying the execution. A motion for a new trial was substituted, for a bill of exceptions, by the superior court, in *May* 1807. By the rules then adopted, they were to be filed within forty-eight hours after verdict, and during the session of the court, and were by the court to be reserved for the consideration of the Supreme Court of Errors, with or without stay of execution, *at their discretion.* 3 *Day* 28. This motion for a new trial is analogous, in many re-

spects, to the practice in *England,* where it is said, it operates to *suspend* the judgment. 3 *Bla. Com.* 387. No new suit is brought ; and the parties are, during the pendency of it, supposed to be in court. The motion is for a rule to shew cause why a new trial should not be granted. If allowed, the rule is made absolute, and a new trial granted. If not allowed, the rule is discharged. If execution is stayed upon the reservation of the motion, as is generally the case, the special bail, the bond for prosecution and the recognizance for the appeal, are not, in any manner, affected by it. This is the well known and established practice under the rule ; and therefore, the motion cannot be likened to a petition for a new trial. In support of this doctrine, I avail myself with pleasure of the strong and expressive language of the Chief Justice, in the case of *Magill* v. *Lyman* & al. 6 *Conn. Rep.* 62. " A petition for a new trial to set aside a judgment by a court of law, is an action. The plaintiff in error has *confounded* a motion for a new trial with the petition, as if they were identical ; and on this position the stress of the argument has been placed. What, then, is a motion ? Any proposition or request, formal or informal, addressed to a court, which can affect a cause, whether by obtaining the continuance of it, a reference of it to men, the exhibition of documents, the granting of a *venire-facias de novo,* or any thing else bearing upon the suit however remotely. But an action is a legal process by writ, duly signed by a magistrate, whereon a duty is paid, commanding the appearance of a defendant in court to answer a specified cause of complaint, served and returned by a legal officer, the subject of pleading, of the law of limitation, of a decree and of error. A petition for a new trial has all these properties ; and by its properties a thing is distinguished." And again, page 64. of the same opinion : " From this brief history the essential difference between petitions and motions strikingly appears. The latter is no suit, and has no resemblance to a petition, except in the effect of granting a new trial ; a fact, which, as has been shewn, is no evidence of common nature or denomination. But a petition for a new trial is a suit at law, with all the properties of an action, terminated by a formal decree,—from this time *functus officio,*—and liable to reversal, at any time within three years, by writ of error. I conclude, then, that a petition is an action, and essentially distinguishable from a motion." I am aware, that the Chief Justice differed from a majority of the

*Fairfield,*
*June, 1829.*

Lockwood
*v.*
Jones,

Court in that case ; but in the opinion of the Court delivered by Judge *Peters,* there is not an expression in opposition to the observations above quoted. The point decided by the Court, was, that the granting or refusal of a new trial, on a petition for that purpose, is a matter of *discretion,* and not the subject of error.

I will now cite some authorities bearing directly on the poin. In *Ainsworth* v. *Peabody,* 1 *Root* 469. the point was distinctly made to the superior court, in a *scire-facias* on a bond for an appeal. Judgment had been rendered for the defendant, a new trial granted, and then a verdict for the plaintiff. The court compared it with the decisions respecting special bail, cited cases in support of the position, and the plaintiff, finding the opinion of the court against him, withdrew his action. Before this case is overruled, it will be requisite to shew, that it is not strictly analogous to cases of special bail ; and this, 1 apprehend, cannot be done.

By the *British* statute, 3 *James* I., bail is required to be given on the allowance of a writ of error, to be a *supersedeas,* with one or more sureties, in double the sum of the judgment sought to be reversed. The condition of the recognizance or bond, is, that the plaintiff shall prosecute the writ of error with effect, and pay all such debt, damages and costs as appear on the judgment, and also all damages and costs to be awarded for the delay of execution. It has been repeatedly decided, under that statute, that if error be brought in the Exchequer Chamber, on a judgment in the King's Bench, and the judgment be affirmed, and then error brought returnable in Parliament, *there must be a new or fresh bail.* *Tilly* v. *Richardson,* 1 *Salk.* 97. S. C. 2 *Ld. Raym.* 840. *Colebrook* v. *Diggs,* 1 *Stra.* 527. S. C. 8 *Mod.* 79. *Anon.* 7 *Mod.* 120. *Com. Dig. tit.* Bail. N.

In this case, it is admitted, that the recognizance entered into, is, in every respect, like a bond for the prosecution of a suit ; nay, that is an express ground of argument ;—it is to prosecute an appeal to effect. The same rules must govern as would govern a bond to prosecute a writ of error, brought on a judgment of the county court to the superior court. The judgment is affirmed. A writ of error is brought on this judgment to the Supreme Court of Errors. Must there not be a new bond ; or is the bond given on the taking out of the writ of error to the superior court operative beyond the court to which it is returnable? Immemorial usage may answer the

question.  Lord *Holt* says : " The recognizance entered into,
upon the allowance of the writ of error, in the Common Pleas,
goes only to the writ of of error that is then brought ; and it is
true, if the judgment affirmed here be reversed by the Lords,
it will discharge that recognizance ; but in case it be affirmed,
here is a delay of execution, and costs that the plaintiff is put
to, and *the recognizance of the Common Pleas does not reach
them.*"  Anon. 7 *Mod.* 121.  Hence he and the other judges
said, that there must be fresh bail to render the execution a *su-
persedeas.*  Moreover, the argument *ab inconvenienti* is very
strong.  The surety never can be safe until, as the case
may be, the lapse of four, five, or even six years.  On the last
day of three years after the rendition of the judgment, a writ
of error or a petition for a new trial may be brought.  This may
continue, and if we may judge from what occurred in this case,
it probably will, three years more.  In the mean time, he has
been compelled to relinquish property given to him as an indem-
nity, and then after the lapse of six years, to pay a bill of costs,
from which he supposed himself exonerated, by the terms of his
recognizance ; for the defendant had prosecuted his appeal to
effect, by obtaining a final judgment against the plaintiff.  The
defendant may well say, *In hæc foedera non veni.*  Chief Jus-
tice *Parsons* lays much stress on this argument *ab inconveni-
enti,* in the case cited from 7 *Mass. Rep.* 342.

I have already said, that it was conceded in the argument,
and not denied by any member of the Court, that if *Lewis S.
Lockwood* had delivered to the plaintiff property of any de-
scription to indemnify him against any loss for entering into
this recognizance, he could not have held it after the judgment
in chief in 1824.  Had it been money, *indebitatus assumpsit*
might have been maintained ; or trover would have lain for
any other articles of personal property.  This seemed irresist-
ibly to result from the principle, that the lien created by the
attachment, is, *ipso facto,* removed, by a final judgment, as well
as from the doctrine never doubted, that special bail was in
such case discharged.  We have, then, a case, in which the
defendant, *Enos Jones,* might have been sued, at any time be-
tween *September* 1824 and *September* 1827, for 400 dollars
in money put into his hands by *Lewis S. Lockwood* to indem-
nify him for becoming his surety, and the money recovered
from him on the ground that he was discharged from his surety-
ship ; and thereafter, in 1829, this sum was recovered from

*Fairfield,*
*June, 1829.*

Lockwood
*v.*
Jones.

*Enos Jones*, by *Horatio Lockwood*, on the ground that he *was not discharged from his suretyship.* If this be not an absurdity, I know not what can be.

It was also said, that if the bondsman on the appeal is discharged on rendition of the judgment in the superior court, it will operate very injuriously to the plaintiff; for he may be remediless for all his costs both before and after the granting of the new trial. Precisely so, if the special bail is discharged; if the bond in replevin is discharged; if the lien on real and personal property is removed,—the plaintiff may lose the fruits of his judgment. What then? The question,—and the sole question—still recurs, is the recognizance or bond satisfied, or the attachment of property *ipso facto* dissolved, by a final judgment? I think it demonstrable from repeated decisions, as well as from the reason and nature of the case, that such is the law. The judgment, therefore, is, in my opinion, correct, and ought to be affirmed.

WILLIAMS, J. conceiving himself interested in the question, and BISSELL, J. having been of counsel in the cause, gave no opinion.

Judgment reversed.